STATE of Missouri, Respondent,

v.

Willie Odell DONNELL, Appellant.

No. KCD 30656.

Missouri Court of Appeals,
Western District.

April 7, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 5, 1980.

Application to Transfer Denied
June 10, 1980.

Gerald Kiser, Public Defender, Liberty, for appellant.

John Ashcroft, Atty. Gen., Steven W. Garrett, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Defendant was charged with attempted burglary, second degree. Sections 560.070 and 556.150, RSMo 1969. A jury found him guilty as charged and fixed his sentence at four years imprisonment in the Missouri Department of Corrections. After an unavailing motion for a new trial defendant appealed, claiming (1) insufficiency of the information to charge a crime, (2) error in the admission of evidence, (3) error in refusing to give a requested instruction, and (4) error in overruling his motion to strike the jury panel.

The amended information on which defendant was tried states in part "that on or about the 13th day of September, A.D. 1977, at the County of Clay, in the State of Missouri, one Willie Odell Donnell did then and there wilfully and feloniously did attempt to burglariously break and enter Clark Oil Company, a commercial building, under the care, custody and control of Jerry W. Walker, the same being a place where diverse goods, wares, merchandise and other valuable things were kept and stored, with the felonious intent then and there to steal, against the peace and dignity of the State."

A Spartan statement of facts will suffice as they are virtually undisputed and their sufficiency to support defendant's conviction has not been questioned.

Shortly before midnight, on September 12, 1977, an attendant at the Clark Oil Company Service Station at 7408 North Oak Trafficway, Gladstone, Clay County, Missouri, secured the station for the night. As part of the regular routine for doing so he checked the rear of the service station, at which time the rear wall was intact, counted and secured the receipts which were on hand, and turned on or set an "intrusion alarm" just before departing. At approximately 2:29 A.M. on September 13, 1977, three members of the Gladstone Police Department converged on the Clark Oil Company Service Station at 7408 North Oak Trafficway in response to the intrusion alarm. Upon arrival, one of the officers observed two black males run from behind the service station. One of the black males, later identified as the defendant, was carrying a "long object". As the officer approached the two black males, the defendant dropped the long object and he and his companion then reversed course, went over a fence and ran in a westerly direction. The officer discovered that the long object which defendant dropped was a sledge hammer and that there was a fresh hole in the back wall of the service station. A "maroonish red" powder residue was observed both on the ground below the freshly excavated hole in the back wall and on the head of the sledge hammer. The color of the rear wall of the service station was also "maroonish red". A forensic chemist testified that samples of both "maroonish red" powder residues contained the "same type of paints". The other two officers who responded to the alarm apprehended defendant and his compatriot as they were fleeing the service station property.

Although assorted merchandise of an estimated value of three to five thousand dollars was in the service station, none was taken as the attempted entry was foiled before the hole in the rear of the building was of sufficient size to permit human ingress. Evidence inadvertently crept into the case arguably suggesting that the description of the subject premises contained in the amended information might also fit other Clark Oil Company service stations in the general area. However, any confusion which might otherwise have resulted was completely dissipated by consistent, specific testimony, from witness after witness, that the situs of the crime for which defendant was standing trial was the Clark Oil Company Service Station at 7408 North Oak Trafficway, Gladstone, Clay County, Missouri, plus the fact that the state's verdict directing instruction was drawn with similar specificity.

Defendant's attack on the amended information is of a bifurcated nature—the description of the subject premises was not sufficiently clear to enable defendant to properly prepare for trial in that it conceivably described several other Clark Oil Company service stations in the general area and for like reason does not protect defendant from subsequent prosecutions for the same offense.

Under prevailing Missouri law informations for burglary must set out the ownership of the burglarized premises in order to show (1) that they are not those of the defendant and (2) to identify the offense so as to protect a defendant from subsequent prosecution for the same offense. *State v. Ford*, 403 S.W.2d 611 (Mo. 1966); and *State v. Peck*, 545 S.W.2d 725, 727 (Mo.App.1977). The requirement that ownership of the burglarized premises be set out in an information is satisfied by an allegation of occupancy or possession, *State v. Rist*, 456 S.W.2d 13, 15 (Mo.1970), and *State v. Peck, supra*, 545 S.W.2d at 727, and it is unnecessary to allege the legal status of the owner or occupant, i. e., whether it is a corporation, partnership or individual, *State v. Ford, supra*, 403 S.W.2d at 612, and *State v. Peck, supra*, 545 S.W.2d at 727. Common sense and basic logic dictate that the same principles be transposed to informations charging attempted burglary.

Although tacitly conceding that the description of ownership set forth in the amended information comports with the prevailing law, defendant vigorously contends that its inherent vice lies in the fact that it conceivably described several other

Clark Oil Company service stations in the general area. Highly apposite is *State v. Ball*, 432 S.W.2d 265 (Mo.1968), where two other buildings in a town fit the same description as that contained in an information charging an accused with burglary, second degree. In rejecting a claim for post-conviction relief the court held that the information's lack of specificity under the somewhat unusual facts did not render it fatally defective for indefiniteness, and if the accused felt he needed a more specific description to enable him to prepare for trial his recourse was by way of a bill of particulars under Rule 24.03 (present Rule 23.04). The present defendant made no effort to obtain a bill of particulars and first complained of the information in his motion for new trial. This, plus the undisputed nature of the evidence and its repeated specificity as to the precise location of the subject premises, strongly suggests, from a pragmatic point of view, that defendant was not handicapped in preparing for trial by reason of any gnawing uncertainty as to which of several Clark Oil Company locations he was charged with having attempted to burglarize on September 13, 1977. This phase of the bifurcated attack on the amended information is ruled against defendant under the authority of *State v. Ball, supra*.

◼ The other phase of the bifurcated attack on the amended information, peril to the defendant of twice being placed in jeopardy for the same criminal conduct, was recently met and rejected in *State of Missouri v. Robert Kirkpatrick*, 595 S.W.2d 760 (Missouri Court of Appeals). There, as here, the accused argued that since the premises described in the information charging him with burglary also fit or described other premises in the same county belonging to the same owner, the information was fatally defective as it exposed him to the peril of being prosecuted a second time for the same criminal conduct. After noting that the evidence clearly differentiated between the subject premises and the other premises belonging to the same owner in the same county, the court held that any peril to the accused of double jeopardy would be adequately dispelled by the record of the proceedings in the charge for which the accused first stood trial. The record in the instant case goes even further in dispelling any peril to defendant of twice being placed in jeopardy for the same criminal conduct, as all the evidence specifically pinned the location of the subject premises down to 7408 North Oak Trafficway, Gladstone, Clay County, Missouri, and the state's verdict directing instruction pinned it down with equal specificity. Consistent with this court's holding in *State v. Kirkpatrick, supra*, this phase of defendant's bifurcated attack on the amended information is also rejected.

◼ Defendant's complaint about the admission of certain evidence arises in the following manner. During the course of the trial counsel for the state asked each of the police officers whether defendant was given a *Miranda* warning. Upon receiving an affirmative reply from each, counsel for the state, *without objection*, then asked each of them if defendant made any statement and they each replied that he had not. Counsel for defendant never moved for a mistrial or requested the court to instruct the jury to disregard or strike the respective answers of the officers that defendant made no statement. Nor was the matter ever broached by defendant in his motion for new trial. Beyond the pale of doubt, this latter frame of questioning was constitutionally impermissible and has frequently been condemned. *State v. Givan*, 573 S.W.2d 104 (Mo.App.1978), and cases cited therein. Sensing that he did not preserve this evidentiary issue for appeal, defendant seeks to avoid his remissness by invoking the benevolence of Rule 27.20(c), colloquially referred to as the "plain error rule". Others have sought and been denied such relief under virtually identical circumstances. *State v. Harris*, 547 S.W.2d 473, 475 (Mo. banc 1977); and *State v. Lovelace*, 461 S.W.2d 733, 735–36 (Mo.1971). Paralleling what was said in *Harris* and *Lovelace*, this court concludes, based upon a review of the entire record, that no manifest injustice or miscarriage of justice resulted from the line

of questioning complained of, and, therefore, declines to grant relief to defendant under Rule 27.20(c).

■ Defendant requested, and the trial court refused to give, Instruction No. A which comported with MAI–CR 2.10 as it stood November 27, 1978, the date this case was tried and submitted to the jury. According to defendant the trial court committed reversible error in refusing to give said instruction. As of November 27, 1978, a date prior to the effective date of MAI–CR 2d, MAI–CR 2.10 was captioned "Parties: General Responsibility for the Conduct of Others" and note number 4 of the "Notes on Use" appended thereto provided "[t]he failure to use MAI–CR 2.10 . . . will not be deemed error even if there is substantial evidence that defendant was a joint, active participant or actor so long as there is no evidence that he was only an aider or encourager." As defendant's possession of the sledge hammer at the situs of the crime constituted substantial evidence that he was a joint actor and a principal, and not just an aider or encourager, the trial court did not commit error in refusing to give defendant's requested Instruction No. A. *State v. Macon*, 547 S.W.2d 507, 515 (Mo.App.1977); and *State v. Stewart*, 542 S.W.2d 533, 539 (Mo.App.1976).

Defendant's final point is posited on the premise that the trial court erred in not sustaining his pre-trial motion "to strike the entire jury panel". Its tentacles spread to the 5th, 6th and 14th Amendments to the Constitution of the United States and Article I, Sections 2, 10, 18(a) and 22(a) of the Constitution of Missouri.

An obvious dichotomy in defendant's final point, coupled with little more than abstract references to various federal and state constitutional provisions ostensibly relied upon, prompts its dual assertion in direct, unembellished terms. First, the jury panel was unconstitutionally structured because reliance solely on voter registration lists for its source of names, hand in hand with the exemption privilege contained in Section 494.031, RSMo 1978, precluded a fair representation of women, a distinctive group in the community. Second, the jury panel was unconstitutionally structured because reliance solely on voter registration lists for its source of names per se prevented it from containing a fair representation of all distinctive groups in the community, e. g., blacks, females, various age groups, etc.

As reaffirmed in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 697, 42 L.Ed.2d 690 (1975), "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." The Supreme Court in *Taylor*, 95 S.Ct. at 702, by way of elaboration went on to hold that "jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof."

*Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979), then came along and laid to rest any hiatuses in the "fair-cross-section" inquiry set forth in *Taylor* (predicated on the 6th Amendment and made applicable to the states by the 14th Amendment) in clear, and direct terms: "In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

■ Charges of unconstitutionally structured jury panels are easy to level but difficult to prove. Contrary to what many who are quick to level such charges appear to think, they do not prove themselves. Those who advocate such charges carry a heavy burden when the time comes to substantiate them. *Duren v. Missouri, supra.* As jury panels under state law are uniquely county oriented, their composition groupwise necessarily varies from county to county and general statistics have no intercounty viability.

Although defendant was afforded an evidentiary hearing on his motion to strike the jury panel, he failed to present so much as a scintilla of evidence (1) that those he claimed were "distinctive groups" were not fairly and reasonably represented on the jury panel in relation to their numbers in the community or (2) that any alleged "distinctive group" was systematically excluded in the jury selection process. Although the defendant in *Duren v. Missouri, supra*, factually established a prima facie violation of the fair-cross-section requirement of the Sixth Amendment, the defendant in the instant case has not done so. Under existing federal authority defendant's patent failure of proof completely nullifies his attack on the jury panel and no state authority has been cited or found which would revive it under any appropriate state constitutional provision.

Judgment affirmed.

All concur.