**STATE of Missouri, (Respondent),**

v.

**Michael P. JONES, (Appellant).**

**No. WD 33593.**

Missouri Court of Appeals,
Western District.

May 31, 1983.

Anne Hall, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Nancy Kelley Baker, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and DIXON and NUGENT, JJ.

CLARK, Judge.

Appellant was charged with the offenses of burglary and stealing and he was convicted by a jury. On this appeal he raises one point in which he contends the trial court erred in denying him the opportunity to impeach a witness for the state through introduction of a prior inconsistent statement. This issue is closely associated with the facts of the case which we recount briefly.

On January 21, 1981, the residence of James Paul was burglarized and a number of items, including a stereo set, were taken. Although the break-in was not discovered until later, it apparently occurred soon after 8:30 a.m. when Paul left his home for the day. At 8:58 a.m., Officer David Williams stopped a 1966 Ford station wagon because the car displayed no license plates. The car was being driven by appellant. Two pas-

sengers were in the car, Debbie McCole and Arthur Oliver. The officer observed a number of items in the back of the station wagon including a television and the stereo later found to be the property of Paul taken in the burglary that morning.

After informing appellant he had been stopped for operating a car without license plates, the officer inquired as to who owned the items in the vehicle. Appellant's response was the subject of conflicting evidence. According to Officer Williams, appellant said the articles belonged to Debbie McCole. Appellant's version was that he merely denied ownership himself. Officer Williams then questioned McCole and Oliver separately. Each denied ownership and claimed to know nothing about the vehicle's contents. The officer confronted appellant a second time and according to Williams, appellant then stated that the property was his. By appellant's version of the conversation, he made no such admission.

The circumstances prompted the officer to place a radio call to inquire about property reported stolen, but at this point, the Paul burglary had not yet been reported. Other officers arrived at the scene and by reason of the conflicting statements about ownership of the property, the items were removed from the station wagon and taken for safekeeping. Oliver was placed under arrest because when first questioned by Williams, Oliver had given a false identity. Appellant was released with a ticket for failure to have a vehicle license. After the Paul burglary was discovered later in the day, a warrant was issued and appellant was arrested and charged.

The point on this appeal centers on the testimony given by Officer Williams at a suppression hearing. He there testified that during questioning at the scene where appellant's car had been stopped, Arthur Oliver had himself said he owned the items in question, having made a trade with a friend. It was appellant's contention Williams' testimony at trial was inconsistent when Williams reported it to have been appellant who asserted ownership of the stolen goods. In cross-examination of Williams, defense counsel sought to introduce the suppression hearing testimony as impeachment, but the court sustained the state's objection to this line of inquiry.

In the process of laying a foundation for the impeachment, defense counsel asked Williams if he had earlier testified at the suppression hearing that Arthur Oliver claimed to be the owner of the stereo by reason of having traded an older set. At one point, Williams said he did not recall, at another he said it was possible he had made such a statement and finally, he denied the statement. Each question was in a somewhat different form. The defense later attempted to call, but was denied permission to use the court reporter who recorded the evidence at the suppression hearing and who would have read the testimony from his notes.

From the series of incidents and the trial court's explanation of its rulings, it appears the learned trial judge concluded no impeachment proof could be introduced because Williams did not unequivocally deny having made the prior inconsistent statement. In addition, the judge appears to have ruled that in the absence of a transcript of the prior testimony, the inconsistent statement could not be read by the court reporter from his notes. On these accounts, the state's objection to the impeachment evidence was sustained. The court was in error in ruling that unequivocal denial of a prior inconsistent statement is a requisite prelude to introduction of the prior statement. It is unequivocal admission of the prior statement which bars its use. When a witness equivocates about a prior statement, it may be shown that he made a previous inconsistent statement. Thus, if a witness professes not to remember if a prior statement was or was not made, a proper foundation has been laid to admit the prior inconsistent statement. *State v. Thompson, 588 S.W.2d 36, 38 (Mo. App.1979).*

■ Here, the foundation was laid when Officer Williams expressed uncertainty as to what his testimony had been at the suppression hearing concerning the claim by Oliver to ownership of the property. Moreover, the record does reveal at one point a denial by Williams to having made the statement, all of which leave a degree of uncertainty more than sufficient to serve as a foundation for introduction of the prior statement.

■ The state appears to argue that the foundation was not laid because defense counsel did not have a transcript of the suppression hearing testimony and could neither read Williams' statement verbatim nor could Williams be supplied a copy to refresh his recollection. No authority is cited for this proposition and we are aware of none. Obviously, some source was needed to prove the inconsistent statement, but the availability of that proof is not a factor in determining when a foundation for impeachment has been laid. Normally that foundation is adequately established by asking the witness if he made the prior statement, calling to the attention of the witness the person to whom the statement was made, the time, place and circumstances and obtaining from the witness either a denial or the answer that he does not remember. *State v. Ivicsics, 604 S.W.2d 773, 780 (Mo.App.1980).* The defense did lay the foundation here in cross-examination of Williams and the court erred in sustaining the state's objection.

■ As to the additional question of whether impeachment of Williams was to be denied because the defense proposed to prove the prior inconsistent statement by use of a court reporter rather than a transcript, the defense was also correct in contending a transcript is not required. As the opinion in *State v. Alexander, 499 S.W.2d 439, 444 (Mo.1973)* notes, among the four theories of admissibility that may be employed in proving the former testimony of a witness: " * * * the official written transcript, or any observer, including the stenographer himself, may be called to prove the former testimony without producing the official report of transcript * * *."

The state contends the offer of proof by the court reporter present at the suppression hearing was not timely because appellant did not make the offer concurrently at the time the objection was sustained, but waited until after the state had rested its case.

Neither the objections by the state nor the rulings by the trial court to the attempted impeachment were clearly expressed. Throughout, there appears to run the thread of assumption that absent a transcript of the suppression hearing testimony, the impeachment inquiry could not be pursued. It was apparently in response to this impediment that appellant sought to question the court reporter regarding the testimony reflected by his notes.

■ This court enjoys an advantage in that the transcript of the suppression hearing has been filed as a supplement to the record on appeal. We therefore have an opportunity to compare the evidence given by Officer Williams in both instances and from those sources, to evaluate the claim of inconsistency in the statements. The state contends, if error be found in the rulings on objections to the impeachment inquiry, that it was harmless because no inconsistent statements were made. In this the state is correct.

Any confusion over who among the occupants of appellant's car claimed ownership of the stereo is attributable to the conflicting statements made by those persons and not by Officer Williams. The latter's testimony at both hearings was that appellant first disclaimed ownership and then reversed his position and said the property was his.

Arthur Oliver was reported by Williams to have followed the same pattern with the result that both appellant and Oliver finally were claiming to be the owners, the latter

apparently making the assertion to relieve appellant of blame.

It follows that the errors noted in rulings by the court were harmless because there was no impeachment evidence to be produced. Appellant suffered no prejudice and is entitled to no relief on the point presented.

The judgment is affirmed.

All concur.