STATE of Missouri,
Plaintiff-Respondent,

v.

Raymond MITCHELL,
Defendant-Appellant.

No. 48392.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 30, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 1985.

Application to Transfer
Denied Aug. 7, 1985.

Henry Robertson, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Judge.

Defendant, Raymond Mitchell, was convicted by a jury of first degree robbery and sentenced to thirty years imprisonment. Defendant appeals. We affirm.

In 1982, Angela Williams and Mary Harris worked at a Church's Chicken fast food restaurant located on Delmar Avenue in St. Louis. One evening in March, shortly after 7:00 p.m., while Ms. Williams was behind the counter, a man entered the restaurant, leaned over the counter, pointed a gun at Ms. Williams and motioned her to the cash register. The restaurant was well lit, and Ms. Williams had an unobstructed view of the gunman. She noted he wore a dark coat and a skull cap.

While Ms. Williams was trying to open the register, Mary Harris, the manager, walked out to the front from the rear of the restaurant. Before Ms. Harris could turn and walk away, the gunman saw her and ordered her not to move. Ms. Harris, seeing that Ms. Williams was unable to open the cash register, walked over and helped her. The gunman then directed Ms. Harris to open a second cash drawer, but, when he saw that it was empty, he turned and ran out with a man in a tan jacket who had been standing at the door with his back to the counter. The robbers were in the restaurant from three to four minutes.

Two men were apprehended a short time later partly through the efforts of George Walker, a night watchman at a nearby church. Around the time of the robbery, Walker was on duty, seated in his car about one block from the restaurant. In his rearview mirror, he saw a late model yellow Chevette pull up and park on the other side of the street. There were two men in the car. Walker watched the two men get out of their car and walk in the direction of Delmar. Then, he got out of his car and looked at the license plate of the Chevette. After the men returned and drove away, Walker flagged down Officer Hobbs, a patrolman in the area, and asked if any action had been reported in the neighborhood. Walker gave Hobbs a description of the Chevette, its occupants and a partial license number. This information was in turn broadcast over the police radio. A short time later, defendant and another man, Karl Hinderman, were arrested. They were driving a late model yellow Chevette with plates matching the reported partial license number.

Ms. Williams and Mr. Walker were brought to the scene of the arrest. Ms. Williams identified defendant as the gunman and a light tan jacket worn by Hinderman as the jacket worn by the second man at the robbery. Mr. Walker identified defendant and Hinderman as the men he had previously seen behave suspiciously. Defendant and Hinderman were then brought back to the restaurant, and Ms. Harris identified defendant as the gunman.

Co-defendant Hinderman was tried before defendant, and both George Walker and Officer Hobbs testified at Hinderman's trial. In the present trial of defendant, defense counsel attempted to impeach Walker and Hobbs with alleged prior inconsistent testimony from Hinderman's trial. The court sustained the state's objections to this attempted impeachment. Defendant claims this was error. We disagree.

At defendant's trial, Walker testified he observed the driver of the yellow Chevette get out of the car, cross the street in front of him, walk north toward Delmar, return to the car, get back out of the car, put on a dark jacket, and again walk toward Delmar, accompanied this time by the passenger in the car. Walker identified defendant Mitchell as the driver of the Chevette. Defendant asserts that Walker testified at Hinderman's trial that Hinderman, not defendant, was the one who got out of the car twice and was the one who put on the dark coat.

Defense counsel simply did not show the testimony of Walker in question to be inconsistent. To impeach Walker, defense counsel referred the court to spe-

cific lines of one page of the transcript from Hinderman's trial. After reading the lines indicated, the court quite properly found no inconsistency. Walker's testimony on a different page of the transcript may have been inconsistent with his present testimony but that page was not pointed out to the court until later during a bench conference. When defense counsel directed the court's attention to this latter page, he was not attempting to impeach Walker's testimony that defendant got out of the Chevette twice; rather, defense counsel was attempting to show that, at Hinderman's trial, Walker had identified Hinderman and not defendant as the driver of the Chevette. Again, defense counsel was unable to demonstrate any inconsistency, because nowhere on these proffered pages of Walker's prior testimony had Walker so testified. For impeachment, defendant obviously must show inconsistent testimony. *E.g., State v. Cooksey,* 643 S.W.2d 632, 633 (Mo.App.1982). Defendant failed to demonstrate this inconsistency and, thus, failed to meet his burden. *Id.* at 634.[1]

Defense counsel also attempted to impeach Walker's testimony that defendant put on a dark coat. On cross-examination, Walker testified he did not recall previously testifying that it was the passenger in the Chevette who put on a dark coat. However, defense counsel did not pursue this issue any further during his cross-examination of Walker. Then, at the start of his case in chief, defense counsel asked to call the court reporter to read those portions of Walker's testimony from Hinderman's trial which counsel believed to be inconsistent. The prosecutor's objection was sustained.[2] Apparently, as an offer of

proof, defense counsel read those portions of the prior transcript he claimed were inconsistent. In the portions read, however, no statement was made by Walker as to who put on a dark coat. Defendant cannot fault the trial court for his own failure to proffer the allegedly inconsistent testimony. *See, e.g., State v. Tolliver,* 562 S.W.2d 714, 717–18 (Mo.App.1978).

Defense counsel's attempted impeachment of Officer Hobbs was unsuccessful for a different reason. At defendant's trial, Officer Hobbs testified that Walker had given him five of the digits of the Chevette's license plate. According to defense counsel, Hobbs testified at Hinderman's trial that Walker only gave him four digits of the license plate. On cross-examination, however, Hobbs did not explicitly deny or claim he could not recall testifying differently. When Hobbs was asked if he might have testified differently on a prior occasion, he replied: "That's possible, yes sir." Defense counsel pursued this matter no further and turned the questioning to another matter. At the start of his case in chief, however, defense counsel asked to call the court reporter to read Officer Hobbs' alleged inconsistent testimony from Hinderman's trial. The prosecutor objected arguing that Hobbs had not explicitly denied making an inconsistent statement and, thus, no foundation had been laid for the impeachment. The trial court agreed and sustained the objection.

 The trial court's ruling was correct but for the wrong reason. The Court and the prosecutor viewed the required foundation from the wrong end. An unequivocal denial of a prior inconsistent

---

1. The elements necessary to lay a proper foundation for impeachment by prior inconsistent statements are well established. *E.g., State v. Vaughn,* 501 S.W.2d 839, 842 (Mo. banc 1973); *State v. Ivicsics,* 604 S.W.2d 773, 780 and n. 3 (Mo.App.1980). Defense counsel's attempt to lay a foundation failed to establish most of these elements and, thus, was additionally defective.

Defendant's counsel on appeal seems to ask for a different reading of the record. In his brief, he argues: "[the prosecutor's] arrogance

and the trial court's desire to give defense counsel a hard time on account of his inexperience should not have been allowed to prejudice appellant." We have read the record. These characterizations are neither correct nor relevant.

2. During this conference, the court made the questionable ruling that a witness could not be impeached if the witness only stated he did not remember testifying differently. *See, e.g., State v. Jones,* 652 S.W.2d 880, 882 (Mo.App.1983).

statement is not a prerequisite to the introduction of that statement for impeachment; rather, an unequivocal admission of the prior statement obviates the needs to introduce the statement and, thus, bars its introduction. *State v. Jones*, 652 S.W.2d 880, 882 (Mo.App.1983). Therefore, if a witness equivocates about a prior statement, counsel may show the witness made a prior inconsistent statement. *Id.* at 882. In its context here, Hobbs' testimony—"That's possible"—was not an unequivocal admission of the prior statement and, thus, was a sufficient foundation for impeachment. *Id.* at 882.

■ The court's refusal to allow the introduction of the prior inconsistent statement, however, was not error, much less reversible error. The impeachment here was merely on a collateral matter, and, thus, the court's ruling was well within the court's discretion to control the extent of examination.[3] *See, e.g., State v. Langston*, 515 S.W.2d 852, 853 (Mo.App.1974). *See also State v. Miles*, 412 S.W.2d 473, 476 (Mo.1967).

Defendant next complains the trial court improperly commented on the evidence and, in effect, gave an improper oral instruction to the jury. In his cross-examination of Ms. Harris, the manager, defense counsel attempted to show Ms. Harris had been inconsistent in her identification of the gunman. From defense counsel's questions, he apparently believed Ms. Harris had previously testified during a pretrial motion that the gunman had no facial hair but was now testifying at trial that he had facial hair.[4] When the prosecutor sought to clarify Ms. Harris' testimony on redirect, defense counsel objected to the prosecutor's use of certain of Ms. Harris' prior statements. The prosecutor replied she could do so because defense counsel had misled the witness and the jury. At this point, the court decided on a review in chambers of the reporter's notes of the pre-trial motion. After reviewing these notes, the court decided that Ms. Harris' testimony was not inconsistent.[5] The court reconvened trial and told the jury: "Ladies and gentlemen when we recessed for the evening yesterday we were going to the Court record and to the Court transcript of various proceedings. We have done that and let it suffice that [defense counsel] was mistaken as to what this young lady testified to at a prior

---

**3.** After reviewing some of the excerpts of Hinderman's trial transcript filed by defendant on appeal but not before the trial court, we note that Officer Hobbs also testified at Hinderman's trial that Walker gave him five digits of the license.

**4.** On cross-examination at trial, Ms. Harris testified:

Q [By defense counsel] Do you recall whether he had any facial hair?

A He had facial hair—at the time I could remember, but now I don't fully remember.

Q You don't recall? Is that correct?

. . . . .

A I don't remember right now. I did at the time.

Q You did at the time?

A Right.

Q You do not now? A (no response)

Q Well do you recall testifying yesterday afternoon at the motion we had? Do you recall that the man—that you did not believe had any facial hair?

A Yes. I said that, but then I also said I thought he had a beard and I thought about it, I don't believe he had a beard. He had maybe a mustache. I don't remember.

. . . . .

Q Yes. Well, yesterday you said you did not believe the man had any facial hair?

A Yes.

Q And today you're saying he may have had a beard, and now you want to say he has a mustache. What has occurred since yesterday that would make you want to change your mind?

A I thought about it after leaving the witness stand yesterday.

**5.** At the pretrial motion, Ms. Harris testified:

Q [By defense counsel] Do you recall whether this individual had any facial hair?

A Yes.

Q What kind of facial hair?

A Well, at the time I wasn't sure, I know it was either—I think it was a beard, he had a beard.

Q· He had a beard?

A Yeah, I'm not sure right now.

Q However you're not sure?

A Uh-huh.

Q Why do you say you were not sure at that time?

A Over two years, I don't remember it plain, you know.

hearing on motion. And with that little statement, [prosecutor], you may proceed."

Defendant argues this statement was an improper comment on the evidence. By suggesting Ms. Harris' testimony had been consistent, defendant complains the court, in effect, determined her credibility for the jury.[6] We disagree.

In order to ensure a fair trial, a trial judge must maintain absolute impartiality, *State v. Fields*, 314 S.W.2d 723, 725 (Mo.1958); *State v. Lomack*, 570 S.W.2d 711, 712 (Mo.App.1978), refraining from uttering comments which express or suggest an opinion as to an issue or which tend to prejudice the minds of the jury against a defendant. *State v. Engleman*, 634 S.W.2d 466, 473–74 (Mo.1982). This does not mean, however, that the judge may not correct counsel when necessary, as long as it is not done in a contemptuous manner, *State v. Nevills*, 530 S.W.2d 52, 54 (Mo.App.1975), or may not summarize evidence in explanation of a ruling, as long as it is not a statement of the facts as a matter of law, *State v. Fields, supra* at 725; *State v. Ball*, 529 S.W.2d 901, 909 (Mo.App.1975). Factors used to determine the propriety of a comment include whether it was volunteered by the trial judge, was not made in response to an objection as part of the court's ruling, was made in the presence of the jury, could have been construed by the jury to the prejudice of the defendant, or indicated to the jury that it was not to reach its own determination of the facts. *State v. Lomack, supra* at 713; *State v. Ball, supra* at 908.

The Court's statement here was made as part of the court's ruling on an objection which had resulted in an lengthy discussion away from the jury. The court's statement, therefore, was not volunteered within the dictates of *Lomack*. The statement was short and virtually neutral. The better practice may have been for the court to permit the prosecutor to correct any misconception by appropriate questioning of Ms. Harris. The court's statement, however, did not settle the question of Ms. Harris' credibility for the jury. She had testified several times that she no longer remembered the exact nature of the robber's facial hair. The jury was still free to decide for itself the consistency and the credibility of her testimony. This is hardly equivalent to the judge ruling as a matter of law that Ms. Harris said the robber had a mustache or a beard or whatever. *Compare State v. Landers*, 596 S.W.2d 487, 488 (Mo.App.1980) *with State v. Fields, supra* at 725.

In his final point, defendant argues the trial court committed plain error by failing to cure a violation of defendant's right to remain silent. During the direct questioning of an Officer Richardson, the prosecutor established that Richardson had found defendant with money clutched in his hand. The following colloquy then took place:

Q Okay. Now what happened?

A At that time placed both subjects under arrest, conducted a search of both of them and advised them of their constitutional rights. Neither made any statements.

[Defense Counsel]: Objection, Your Honor and ask the jury not to regard. The

**6.** The state argues that defendant did not preserve this point for review because his contentions on appeal were not presented to the court at trial nor in the motion for a new trial. *See, e.g., State v. Nevills*, 530 S.W.2d 52, 54 (Mo.App. 1975). The objection at trial was general and not limited to any particular ground. Specifically, defendant's grounds for objection were that the testimony was inconsistent and that to tell the jury otherwise would be to mislead the jury. In his motion for a new trial, the alleged error was that the court's statement introduced "otherwise inadmissible" evidence to the jury and in so doing bolstered the prosecutor's claim that defendant had misled the witness and the jury. On appeal, defendant claimed that the court's statement was a forbidden comment on the evidence indicating to the jury that it was not to determine the credibility of the witness for itself and hence violative of § 546.380, RSMo 1978 and Rule 27.06. While in a pristine sense defendant did not preserve this point on appeal, *see, e.g., Walker v. Woolbright Motors, Inc.*, 591 S.W.2d 289, 291 (Mo.App. banc 1979), we find no prejudicial error in the court's statement to the jury under any standard of review.

police officer is being nonresponsive to the question.

The Court: If that's your objection it will be overruled because he is answering that question. She asked him what he was doing and what he did next.

The prosecutor then proceeded to question Richardson about other matters and made no further reference to or further inquiry into defendant's post-arrest silence.

Since Richardson's answer was responsive to the question asked, the trial court's ruling on defense counsel's objection was correct. No other ground was raised for objecting to Richardson's remark, nor was the point preserved for review in defendant's motion for new trial. Defendant, however, complains Richardson's statement was so prejudicial it created manifest injustice.

■ Admittedly, an accused has no duty to speak, and the admission of evidence of his silence may constitute a violation of his constitutional rights. *State v. Stuart*, 456 S.W.2d 19, 22 (Mo. banc 1970). But, error in the admission of such evidence does not always require reversal, or as in this case, rise to the level of manifest injustice. *See State v. Teal*, 624 S.W.2d 122, 125 (Mo.App.1981).

■ The prosecutor here did not purposefully elicit the statement about defendant's silence, nor did she pursue the subject further. There was no effort to draw attention to the fact that the defendant exercised his right to remain silent. *See State v. Jakoubek*, 619 S.W.2d 879, 880, 881 (Mo.App.1981). Under these circumstances, it is questionable whether any error was committed. Moreover, with the wealth of incriminating evidence admitted through the three eyewitnesses, Ms. Harris, Ms. Williams, and Mr. Walker, the officer's voluntary statement hardly could have prejudiced defendant so as to create manifest injustice. *See, e.g., State v. Harris*, 547

S.W.2d 473, 475 (Mo. banc 1977); *State v. Lovelace*, 461 S.W.2d 733, 735–36 (Mo. 1971); *State v. Jakoubek*, 619 S.W.2d 879, 880, 881 (Mo.App.1981); *State v. Donnell*, 598 S.W.2d 569, 572–73 (Mo.App.1980).[7]

Judgment affirmed.

SMITH, P.J., and SNYDER, J., concur.

7. Some trial courts follow a pre-trial practice which usually obviates this issue. Once a pre-trial determination is made that the defendant made no inculpatory statement, the court explicitly reminds the prosecutor that, in the state's case in chief, no inquiry nor voluntary reference need be made about the defendant's silence; and, if such an inquiry or reference is made, the court will entertain a motion from defense counsel for a mistrial.