STATE of Missouri,
Plaintiff–Respondent,

v.

Parris Kendall BENTZ,
Defendant–Appellant.

No. 53564.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 14, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 15, 1989.

Michael A. Gross, St. Louis, for defen-
dant-appellant.

William L. Webster, Atty. Gen., John M.
Morris, Asst. Atty. Gen., Jefferson City, for
plaintiff-respondent.

KAROHL, Judge.

Defendant Parris Kendall Bentz was convicted by jury of one count assault first degree, a Class "B" felony, § 565.050 RSMo 1986; one count unlawful use of a weapon, § 571.030.1(4) RSMo 1986; and one count armed criminal action, § 571.015 RSMo 1986. The court sentenced defendant to serve ten years for assault first degree concurrent with twenty-five years imprisonment for the armed criminal action conviction, and a consecutive term of three years imprisonment for unlawful use of a weapon. Defendant seeks a new trial on three grounds. He contends the trial court erred by: (1) allowing the state to question defendant about his suspension from high school; (2) permitting evidence of prior knife-wielding incidents involving defendant; and, (3) denying defendant's motion for directed verdict. We affirm.

The state charged defendant with three counts of armed criminal action, three counts of assault in the first degree, and three counts of unlawful use of a weapon. The charges resulted from two separate incidents between defendant and Joseph Watson. The jury found defendant guilty on three counts and not guilty on six counts.

The first incident occurred in November, 1985, when defendant allegedly hit Watson with a baseball bat. Watson had followed some students home after school. He stopped his car and began arguing with the driver of the other car, when defendant walked up the street carrying a baseball bat. Watson testified defendant swung the bat at his head, but missed, and then hit him in the back with the baseball bat. Watson also testified defendant struck his car with the bat several times. Defendant testified he did not hit either Watson or Watson's car with the bat. Defendant stated he did approach Watson with a baseball bat, but claimed Watson left after seeing him with the bat. David Guber also testified about the incident. He claimed defendant swung the bat at Watson's head, but said he did not see the bat actually strike Watson or the car. He testified, however,

he did hear "a noise on the car" during the scuffle between Watson and defendant.

The state charged defendant with one count first degree assault, one count armed criminal action, and one count unlawful use of a weapon for striking Watson with the baseball bat. The jury found defendant not guilty on these charges.

The additional charges against defendant resulted from a fight between defendant and Watson on December 9, 1985. That night, at approximately 8:30 p.m. Watson noticed defendant walking from a 7–11 store. Watson, who was at a service station, called out and told defendant to pay him for the damage defendant caused to his car by striking it with a baseball bat. Defendant refused. The two exchanged words, and defendant stabbed Watson under the arm in the chest area with a small knife. The jury found defendant guilty of three charges involving this stabbing.

After being stabbed, Watson went inside the service station, grabbed a crowbar, and chased defendant. Defendant ran several yards and picked up another knife he had placed near some trash dumpsters earlier in the day. A scuffle ensued. Watson hit defendant with the crowbar and defendant stabbed Watson again. The jury found defendant not guilty on the charges associated with this part of the affray.

Several witnesses testified about the incident. Defendant testified he stabbed Watson in self defense after Watson attacked him with a crowbar. He claimed Watson pushed him, he told Watson he did not want to fight, he had a knife and to stay away. Defendant claimed Watson then shoved him, and he swung his arm and hit Watson in the shoulder. He claimed Watson then went into the service station and came running after him with a crowbar. Defendant said he ran and picked up a knife he had left nearby. He testified Watson hit him with the crowbar and was attempting to hit him again when he stabbed Watson.

Watson testified defendant came after him unprovoked with a knife and stabbed him under the arm. Watson claimed he was carrying no weapons when attacked.

After being stabbed, he went inside the service station and picked up a crowbar. Watson stated he chased defendant with the crowbar, and defendant flashed a knife in his face. Watson claimed that only when defendant flashed the knife in his face did he hit defendant with the crowbar. Watson testified defendant then grabbed the crowbar from him and stabbed him in the stomach with the knife.

Eyewitnesses also testified. Scott Sedach and Stephanie Nash were with defendant on the night Watson was stabbed. Sedach testified it seemed Watson wanted to fight defendant, but Watson made no movement toward defendant when defendant "took his little blade off his belt buckle and cut his [Watson's] shirt or jacket or whatever beneath his arm." He testified that after being stabbed, Watson ran into the service station and grabbed a crowbar, and defendant went and picked up a knife he had placed near some trash dumpsters. According to Sedach, Watson hit defendant with the crowbar and defendant then stabbed Watson again, this time in the kidney area.

Stephanie Nash testified Watson had asked defendant to fix his car, and defendant said "[d]on't mess with me now. I'm drunk and I'll kill you." She said Watson and defendant looked at one another as if they were going to fight, and then defendant took a knife from his belt and "cut him [Watson] right underneath the arm." She testified Watson was not armed at this time. Nash testified defendant ran to some trash dumpsters and then had another, larger knife. She stated Watson struck defendant with a crowbar, and only then did defendant stab Watson a second time.

George Hooper testified he was working at the service station at the time of the fight between Watson and defendant. He stated he did not see the attacks, but that Watson came inside the service station, said he had been stabbed, grabbed a tire iron and went back outside. He also stated Watson came back inside the station about five to ten minutes later and said he had been stabbed again.

Kevin Phelan was with Watson at the service station. Phelan testified defendant "pulled something from his pocket or belt" and cut Watson under the arm. He heard defendant tell Watson he would have to kill him. Phelan stated Watson then went inside the service station, grabbed a crowbar and followed defendant. Phelan testified defendant had another knife in his hand and swung the knife at Watson. He claimed Watson hit defendant with the crowbar in self defense. The crowbar had already dropped to the ground before defendant stabbed Watson the second time.

Additional evidence was presented that an animosity existed between defendant and Watson and they had been involved in several disputes.

Defendant was charged with two counts assault, two counts armed criminal action, and two counts unlawful use of a weapon for the stabbings. He claimed self defense. The jury found defendant guilty of one count assault, one count armed criminal action, and one count unlawful use of a weapon for the stab wound under the arm. The jury found defendant not guilty on all charges relating to the stab wound in the stomach area.

Defendant's first claim is the trial court erred in allowing the prosecutor to question defendant about his suspension from high school. Defendant was suspended from school on the day of the stabbings. During cross examination, the prosecutor asked defendant whether he was still in high school, and defendant testified he had been suspended from the Parkway School District. Defendant claims evidence of his suspension was prejudicial. We find the statements regarding defendant's suspension were not prejudicial.

Defendant testified on direct he knew Watson from the neighborhood and also from school. The prosecutor asked defendant what schools he and Watson had attended together. He then asked defendant if they still attended the same school, and defendant stated he no longer attended the same school as Watson. The prosecutor asked why defendant had switched schools. The court overruled an objection on the

ground of relevance. The prosecutor explained to the court he wanted to ask about the suspension because defendant had been suspended on December 9, 1985, the day of the attack, and he wanted to show what happened to defendant on that day.

Defense counsel expressed a concern the prosecutor was going to discuss prior incidents which occurred at the Parkway Schools involving defendant. The court precluded the prosecutor from this line of questioning.

Mr. Banton—Well, your Honor, what he's going to get in evidence is not only information relating to that [the suspension], but also information relating to prior incidents at Parkway School District and everything else. And I think that is just totally irrelevant.

Mr. Kaiser—I'm not going to ask any incidents—Court—But you can't bring in any evidence of another crime. You're not going to do that.

A—No.

Court—Then you can attack his credibility, certainly. Your objection is overruled.

■ Defendant testified he was suspended because someone attacked him. The court sustained an objection to the prosecutor's question of whose choice it was to change schools. The defendant added he had been suspended from all Parkway schools. No additional questions concerning defendant's school record were asked. The trial court did not allow the prosecutor to go into any details of why defendant had been suspended. The extent of cross examination of a criminal defendant lies largely in the discretion of the trial court. *State v. McClintic*, 731 S.W.2d 853, 856–57 (Mo.App.1987). We cannot say the trial court abused its discretion in allowing defendant's testimony.

Further, defendant suffered no resulting prejudice. It was undisputed that defendant stabbed Watson; the issue was whether he stabbed Watson in self defense. The jury found defendant guilty on three counts for stabbing Watson the first time and not guilty on all other counts. The not guilty verdicts suggest the jury was not influenced by the school suspension evidence. The witnesses to the stabbing all testified defendant stabbed Watson the first time without justifiable provocation. The overwhelming evidence supported the jury's finding. Point denied.

Defendant's second claim is the trial court committed plain error in permitting references to prior knife-wielding incidents involving defendant. Defendant claims the cumulative evidence was prejudicial and the court should have acted sua sponte in excluding the evidence. He alleges four specific points of plain error. He claims the court committed plain error by: (1) allowing victim to refer to an altercation between he and defendant when they were in the fifth grade; (2) permitting victim to testify that prior to the stabbings defendant told Watson he had stabbed someone else earlier that day; (3) allowing police officer to testify defendant was wanted for another stabbing at the time he was arrested for wounding Watson; and, (4) permitting prosecutor to state during closing argument that what occurred between defendant and victim "was not one isolated incident."

Defendant's claims of error must be reviewed under the plain error standard. Therefore, we reverse only if a manifest injustice or miscarriage of justice has resulted. *State v. Grady*, 691 S.W.2d 301, 303 (Mo.App.1985), *cert. denied*, 474 U.S. 951, 106 S.Ct. 317, 88 L.Ed.2d 301. Based upon a review of the record we cannot say these incidents resulted in manifest injustice for defendant.

■ Defendant's first claim of plain error is the court erred in allowing Watson to testify regarding an incident between him and defendant which occurred when they were in fifth grade. Watson testified defendant had pulled a knife on him while he was walking to class. The prosecutor asked Watson about the incident during redirect only *after* defense counsel questioned Watson about fights between the two during elementary school on cross examination. Watson's testimony on redirect became relevant in response to questions asked during cross examination. The rul-

ing permitting redirect on a matter first examined by defendant did not constitute plain error.

Defense counsel asked Watson if it were true he had never gotten along with defendant, and inquired "had you had previous fights with him [defendant] in elementary school?" When defense counsel cross examines a witness about a dispute with a defendant, it is proper for the prosecutor to inquire about details of the affair. *State v. Acklin*, 737 S.W.2d 743, 747–48 (Mo.App. 1987). There was no error, plain or if preserved.

The police officer's testimony that he was already seeking defendant for a prior stabbing at the time he arrested defendant did not constitute plain error. Officer Molla testified that on December 9, 1985, he received a description of a man wanted for a stabbing which had just occurred. He stopped defendant as the suspect. The prosecutor asked the officer what he did once he stopped defendant, and the officer responded he "got out of the car and the subject in question was at that time also wanted for a crime of a previous stabbing. At that time I got out of the car and had the subject put his hands on the car." The prosecutor asked no questions about the prior stabbing.

■ Under the plain error standard, the officer's unsolicited response that defendant was wanted for another stabbing does not mandate reversal. *See, e.g., State v. Moiser*, 738 S.W.2d 549, 564 (Mo.App.1987); *State v. Mitchell*, 693 S.W.2d 155, 160–61 (Mo.App.1985). The prosecutor did not purposely solicit the statement from the officer, and no attempt was made to draw attention to the officer's statement. There was strong evidence to support the jury's finding of guilt. Under the circumstances of the case, particularly the defense of self defense and the witnesses testimony on that defense and the not guilty verdicts, we will not find a manifest injustice resulted.

■ The prosecutor's statement during closing argument that what occurred between Watson and defendant was not "one isolated incident" will not support a claim of plain error. During closing argument, an attorney may argue from evidence introduced at trial. *See, State v. Klaus*, 730 S.W.2d 571, 579 (Mo.App.1987). Here, the evidence indicated defendant and Watson disliked one another and had fought and argued on several occasions. The argument was helpful to both the state's theory and defendant's claim of self defense. Defendant was charged with three counts of assault resulting from *two* different fights between him and Watson. The evidence clearly indicated the night Watson was stabbed was not the only fight that ever occurred between defendant and Watson. In addition, a conviction will be reversed because of improper argument only if the comment complained of decisively affected the jury's determination. *State v. Hicks*, 716 S.W.2d 387, 390–91 (Mo.App.1986). Defendant has not persuaded this court that the prosecutor's statement affected the jury's verdict.

■ Defendant's final claim of plain error relates to Watson's testimony that immediately prior to the stabbings defendant told Watson he had stabbed someone else earlier in the day. The prosecutor did not pursue any questions about the subject, and Watson's testimony was an unsolicited response. There was overwhelming evidence to support the jury's finding that defendant assaulted Watson with a knife. If a defendant's guilt has been established by overwhelming evidence, no manifest injustice occurs in refusing to invoke plain error. *State v. Boyd*, 706 S.W.2d 461, 464 (Mo.App.1986). Here, the overwhelming evidence indicated defendant did not stab Watson under the arm in self defense. Several witnesses testified Watson was unarmed when defendant stabbed him the first time. Defendant has failed to establish any prejudice which resulted from the statement. Defendant's claims of plain error are denied.

■ Defendant's final claim is the trial court erred in denying his motion for directed verdict of acquittal. Defendant argues only one assault occurred on December 9, 1985, he acted in self defense, and therefore the court erred in denying his motion. This claim, however, is not sup-

ported by the record. In considering a motion for acquittal, the evidence must be viewed in a light most favorable to the state, assuming the evidence of the state to be true. *State v. Mast,* 713 S.W.2d 601, 602 (Mo.App.1986). The evidence supports a finding of two assaults and a guilty verdict on one. The court properly denied the defendant's motion for directed verdict on the asserted grounds.

The evidence presented at trial indicated that two separate assaults occurred on the evening of December 9, 1985. Several witnesses testified defendant stabbed Watson two times. The physician who treated Watson after the stabbing testified Watson had been stabbed twice. In addition, there was strong evidence defendant was not in imminent danger when he stabbed Watson under the arm. Several witnesses testified defendant and Watson were arguing when defendant pulled out a small knife and stabbed Watson, who was not armed. The jury could have properly found defendant guilty of the charges against him based upon the evidence. The trial court properly denied defendant's motion for directed verdict.

WE AFFIRM.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.