STATE of Missouri,
Plaintiff-Respondent,

v.

Larry MOISER, Defendant-Appellant.

No. 51960.

Missouri Court of Appeals,
Eastern District, Division Four.

Sept. 1, 1987.

Motion for Rehearing and/or Transfer Denied Sept. 30, 1987.

Application to Transfer Denied Nov. 17, 1987.

550

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

James Jay Knappenberger, Clayton, for defendant-appellant.

SIMON, Judge.

Defendant, Larry Moiser, was found guilty by a jury on the following four counts: (1) selling marijuana, a Schedule I controlled substance, in violation of § 195.-020, RSMo Cum.Supp.1984 (All further references shall be to RSMo Cum.Supp.1984 unless otherwise noted); (2) possessing more than thirty-five grams of marijuana in violation of § 195.020; (3) possessing psilocybin, a Schedule I controlled substance, in violation of § 195.020; and (4) possessing pentazocine, a Schedule IV controlled substance, in violation of § 195.240, RSMo (1978). Defendant was sentenced to a term of imprisonment of twenty-five (25) years for Count I, a consecutive term of ten (10) years for Count II, and concurrent terms of ten (10) years apiece for Counts III and IV to be served consecutively to Count I.

On appeal, the defendant contends that the trial court erred in: (1) overruling defendant's pretrial motion to dismiss Count I and failing to sustain defendant's motion for judgment of acquittal at the end of defendant's case and at the close of all the evidence, in that the evidence was insufficient; (2) allowing into evidence a tape recorded phone conversation and testimony concerning that conversation and various other conversations by third parties; (3) failing to sustain defendant's request for a mistrial or to take other corrective measures after the prosecutor made certain references regarding defendant's attorney and the representation of defendant's wife,

Cathy Moiser; (4) failing to suppress evidence obtained pursuant to a search warrant; (5) allowing the prosecution to refer to the unavailability of the confidential informant, Bill Howard, and a threat made by defendant concerning Bill Howard; (6) allowing the prosecution to elicit evidence that defendant was involved in a "prior heroin sale;" (7) allowing evidence to be received concerning defendant's silence after being advised of his rights; (8) allowing the prosecution to mention, during voir dire, the fact that Cathy Moiser may testify; and (9) allowing the prosecution to produce rebuttal evidence concerning Cathy Moiser's conversation with a probation officer regarding a pre-sentence investigation done as a result of her guilty plea to certain criminal charges. We affirm in part and reverse in part.

In determining whether evidence is sufficient to sustain a criminal conviction, we accept as true all evidence, direct and circumstantial, and all reasonable inferences which are most favorable to the verdict and disregard the evidence and inferences contrary to a finding of guilt. We do not weigh the evidence, but rather, determine whether or not there was substantial evidence to support the jury verdict. Substantial evidence means evidence from which the trier of fact could find the issue in harmony therewith. *State v. Ritterbach*, 637 S.W.2d 820, 822 (Mo.App.1982).

On April 2, 1985, St. Louis County Police Officer Tom Crowley received a telephone call from an informant, Bill Howard. The informant was instructed to come to Crowley's office in the Drug Enforcement Unit where he agreed to make a telephone call. The informant dialed a number, stating that it was "Larry Moiser's phone number."

A tape recorder was attached to the phone, and the call was made and recorded in Officer Crowley's presence and partially in the presence of Officer Busalaki. Prior to recording, the tape recorder was tested. The recording of the conversation that ensued was played for the jury. The pertinent parts of the conversation illustrate that the informant asked the person to whom he spoke if he were "Larry" to which the response was "Yeah." Later, the informant stated, "Uh, I'm with this guy, how much did you want for one of those?" to which the response was, "Five eighty five." An arrangement was made for the informant and the other speaker to meet later that day. After the call was recorded, Officers Crowley and Busalaki played back the tape.

The informant then drove from the police station to North St. Louis County, followed by Officers Busalaki and Scalise. They stopped at a tavern where the informant made a telephone call to someone who instructed him to "call back in a few minutes and you'll be able to come up." At that time, the informant's person and car were searched for contraband and money, and the informant was equipped with a body microphone. The receiver for the microphone was in the police car, but the police did not possess recording equipment at that time. The body microphone and receiver were also tested.

The informant was then given $600 in $20 bills, the serial numbers of which were recorded. The informant entered a residence located at 10104 Count Drive from which Officers Busalaki and Scalise heard the following conversation in pertinent part: The informant asked, "What's going on, Larry.... Do you have the stuff?" Someone replied, "Yes," then the informant said, "Here's $600."

The informant then left the residence, met the two officers, and handed them a bag, the contents of which were later identified as marijuana. A search warrant was subsequently obtained for the residence at 10104 Count Drive listing marijuana and the $600 as the items to be seized.

The search was executed that same evening. When police entered the residence, there were four subjects present, including defendant. Large quantities of marijuana were seized: one hundred forty-four pounds were found hidden in the basement; traces were found on a living room table; in a kitchen refrigerator, and in a bedroom dresser drawer. Also taken from the residence were hypodermic needles containing

pentazocine, a Schedule IV controlled substance, which were found in a bedroom dresser drawer.

A metal security box was found on the dining room floor. Upon receiving the key to the box from defendant, police officers found mushrooms inside, which were identified as psilocybin, a Schedule I controlled substance. Also inside the box was cash, including the $600 given to the informant, and a piece of paper on which were written names, phone numbers, and figures. The handwriting on this piece of paper matched a handwriting sample taken from defendant.

Because the informant was unavailable and Officers Busalaki and Scalise did not see who sold the marijuana to the informant, defendant was identified by his voice. The three police officers involved in the transaction, Crowley, Busalaki, and Scalise, identified defendant's voice as that heard either on the tape recording of the telephone conversation or heard through the body microphone receiver.

Defendant's evidence was that he and his wife, Cathy Moiser, separated in January, 1985, and that he did not live at 10104 Count Drive at the time of the incident. From January, 1985, until approximately May, 1986, defendant lived with his mother, and his wife lived at 10104 Count Drive with friends. One of those friends and the wife's brother kept drugs at the residence and sold marijuana out of the house. The brother was one of the persons present at the search.

On April 1, 1985, one of the friends brought the marijuana, seized by the police, to 10104 Count Drive. The wife and friend then hid the marijuana in the basement and the mushrooms belonging to the friend in the metal box.

Defendant's wife stated that although defendant was at the house on April 2, 1985, she did not show him the drugs in the basement or metal box. To the best of her personal knowledge, defendant did not know about the marijuana. The wife testified, "there is no way I would have let him know it was there .... [b]ecause he would have pitched a fit. I had it hid."

Defendant's first point is that the trial court erred in overruling defendant's pretrial motion to dismiss Count I and in failing to sustain defendant's motion for judgment of acquittal at the end of defendant's case and at the close of all the evidence in that there was insufficient evidence to sustain a conviction on each of the four offenses charged. Before analyzing the sufficiency of the evidence, however, we must first address the admissibility of that underlying evidence. This necessitates addressing defendant's points in a different order than presented in his brief. Specifically, with regard to determining whether there was sufficient evidence to sustain a conviction on Count I for the sale of marijuana, we must first address defendant's point two, i.e., whether the trial court erroneously admitted into evidence a tape recorded phone conversation and testimony concerning that conversation and other conversations by third parties which served to identify defendant as the seller of the marijuana. Similarly, in determining whether sufficient evidence existed to sustain convictions on Counts II, III, and IV for the possession of controlled substances, we must first address defendant's point four concerning the validity of the search warrant.

In keeping with this format, we address defendant's point two contending that the trial court erred in admitting into evidence a tape recording of the informant allegedly calling the defendant to arrange a controlled drug buy, police officers' testimony regarding that conversation, and police officers' testimony regarding the conversation informant had with someone at 10104 Count Drive contemporaneously with the drug transaction while officers waited in a police car. Specifically, defendant states that: (1) such evidence did not sufficiently identify the defendant as the seller; and (2) such evidence constituted inadmissible hearsay. In reference to the identity of the seller, defendant states that since the informant is unavailable to testify, the only evidence identifying defendant as the telephone caller and as the seller of the marijuana is the testimony of the police officers

who heard the transaction. It is alleged that this testimony alone is insufficient to support a conviction because the officers had not met defendant *prior* to April 2, 1985 and their only familiarity with his voice occurred while meeting defendant during the search and hearing his voice several days later when defendant was "very intoxicated."

■ Defendant's contention is without merit. In a similar case, *United States v. McMillan*, 508 F.2d 101 (8th Cir.1974), a police officer participated in the recording of an informant's telephone conversation with a defendant to arrange a controlled buy. During the recording, the officer could only hear informant's part of the conversation. The officer then played back the tape and was able to identify defendant's voice. The court stated that the "standard for the admissibility of an opinion as to the identity of a speaker is merely that the identifier has heard the voice of the alleged speaker at any time." *Id.* at 105 (citing *United States v. Rizzo*, 492 F.2d 443 (2d Cir.), cert. denied, 417 U.S. 944, 94 S.Ct. 3069, 41 L.Ed.2d 665 (1974) (emphasis added)). Defendant's argument that the police officers' identification of defendant is tainted because they had not heard defendant's voice prior to the date of the transaction misstates the applicable law. The test is whether, at any time, the officers had heard defendant's voice from which they could compare the voice heard on the tape and through the body microphone. Officer Crowley testified that he heard defendant's voice during the execution of the search warrant, and that defendant's voice and the voice on the tape "were from the same person." Officer Busalaki testified that he heard defendant's voice during the search and on the ride to the precinct station, and that defendant's voice matched the voice he heard on the tape and over the body microphone. Officer Scalise testified that he heard defendant's voice on two separate occasions after the arrest, and that it sounded similar to the voice heard over the body microphone. Furthermore, no specialized training in voice identification is required. *Eichelberger v. State*, 524 S.W.2d 890, 894 (Mo.App.

1975). Thus, we find the officers' testimony sufficient to establish defendant's identity as the speaker on the tape and as the seller of marijuana heard over the body microphone.

Defendant also contends that the above evidence in addition to a statement by Officer Busalaki that, at one point, Bill Howard stated that he would keep calling from a phone until he got ahold of "Larry" were impermissible hearsay. The state does not address this contention. This issue was not mentioned in defendant's motion for new trial, and therefore has not been preserved for review. *See State v. Bailey*, 714 S.W.2d 590, 593 (Mo.App.1986). "The rules require that points in a motion for new trial be specific." *State v. Reed*, 640 S.W.2d 188, 193 (Mo.App.1982). This court notes that trial counsel is not counsel on appeal. We elect to review this unpreserved allegation for plain error under Rule 29.12(b). "Under this standard of review, the plain error complained of must impact so substantially upon the rights of the defendant that manifest injustice or a miscarriage of justice will result if left uncorrected." *State v. Driscoll*, 711 S.W.2d 512, 515 (Mo. banc 1986).

■ With regard to the admissibility of testimony concerning the body microphone transmissions and the statement by Officer Busalaki, we find *State v. Taylor*, 508 S.W.2d 506 (Mo.App.1974) dispositive. In *Taylor*, a police officer accompanied an informant to a house to purchase drugs from defendant. Because the informant was unavailable at trial, the officer was allowed to testify to the conversation held between the informant, the defendant, and an accomplice present regarding the sale. On appeal, the defendant alleged that the officer's testimony was hearsay. This court held the admission of such testimony to be part of the res gestae of the sale:

The general rule is that statements or acts and conduct of third persons are admissible in evidence when they are so closely connected with the crime so that they constitute a part of the res gestae. While often referred to as the exception

relating to excited utterances, the phrase is, in addition, employed to explain declarations giving meaning to an operative transaction such as a sale. McCormick, Evidence 586 (1954).

The statements and conduct here preceding and at the time of the sale can be said to be so closely connected with the crime as to give meaning to the sale, and so as to constitute a part of the res gestae—that elucidates the main fact in issue—whether the sale of heroin actually took place. The rule is applicable to acts and conduct of third persons " 'which precede the offense immediately or by a short interval of time and which tend to elucidate a main fact in issue....' " *State v. Talbert*, supra [454 S.W.2d 1] at 3 [ (Mo.1970) ]; Cf. *State v. Wright*, 319 Mo. 46, 4 S.W.2d 456, 458 (1928).

*Id.* at 513.

Similarly, testimony regarding the conversation heard over the body microphone and the statement by Officer Busalaki that Bill Howard said he would keep calling from a phone until he got ahold of "Larry" are part of the res gestae of the sale. These statements immediately precede or are contemporaneous with the sale. Furthermore, they elucidate whether the sale of marijuana actually took place. The trial court's admission of this testimony, therefore, was not erroneous.

■ With regard to defendant's other allegation of error concerning the admission of the tape recording of the phone conversation, we find *State v. Spica*, 389 S.W.2d 35 (Mo.1965) dispositive. In *State v. Spica*, appellant was convicted of first degree murder. On appeal, he contested the admissibility of certain tape recorded conversations he had with decedent's wife as impermissible hearsay. Our Supreme Court admitted appellant's own statements as declarations against interest. In deciding to also admit the statements of decedent's wife who was unavailable at trial, the court stated:

We turn again to 22A C.J.S. Criminal Law for the general rule as set out in § 734(2) at pp. 1081–1083 as follows:

"Where a statement in the nature of an accusation is made to accused and he replies thereto otherwise than by unequivocally denying the accusation in toto, as where he assents to the truth of the charge in whole or in part, or admits it in part and denies it in part, or where he makes an evasive or equivocal reply, or where he follows the denial with an admission of certain facts, the statement and the reply thereto may be received and considered against him to the extent that he admits the truth of the charge, the admission being evidence, and the statement not being direct evidence but admissible only in connection with the reply." ... Testimony of such statements is a recognized exception to the hearsay rule.... In this case the conversations consisted of numerous statements on the part of [decedent's wife], and numerous statements in reply by appellant amounting to declarations against interest, but to obtain the full significance and meaning of the declarations of appellant the statements of [decedent's wife] are helpful if not necessary.

*Id.* at 47.

We adopt the reasoning of *State v. Spica*, 389 S.W.2d 35 (Mo.1965) to the present case. Defendant's statements are admissible as declarations against interest. The statements of Bill Howard are also admissible as being necessary to obtain the full significance and meaning of defendant's declarations. We rule this point against defendant. As to defendant's contention regarding the insufficiency of evidence to establish his identity as the seller of marijuana under Count I, we find that substantial evidence exists through the testimony of the police officers regarding the body microphone transmission and the tape recording. *See United States v. McMillan*, 508 F.2d at 105.

The determination of whether substantial evidence also existed to sustain defendant's convictions under Counts II, III, and IV first requires an analysis of the validity of the search warrant. Defendant contends in his fourth point on appeal that the

search warrant and evidence seized pursuant to that search warrant should have been suppressed because the supporting affidavit lacked sufficient facts to show probable cause for the issuance of the warrant. Specifically, defendant alleges that the affidavit failed to set forth the underlying circumstances from which the affiant police officer concluded that the informant was credible or his information reliable. In support of this argument, defendant cites *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and pre–1983 Missouri cases following *Aguilar v. Texas*. In 1983, however, the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) substituted a "totality of the circumstances" probable cause test in place of the more rigid and technical, two-pronged "veracity" and "basis of knowledge" tests developed from *Aguilar v. Texas*.

■ Under this less restrictive test, probable cause is to be determined by looking at the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. at 230–31, 103 S.Ct. at 2328–29.

The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at 238, 103 S.Ct. at 2332. An issuing judge's determination as to what facts and circumstances constitute probable cause is accorded great deference by the reviewing court, *State v. Hodges*, 705 S.W.2d 585, 588 (Mo.App.1986), whose duty is simply to ensure that there was a substantial basis for the issuing judge to conclude that probable cause existed. *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. at 2332.

■ Defendant argues that the affidavit's conclusionary assertions of the informant's past reliability and his familiarity with the appearance and texture of marijuana fail to set forth underlying circumstances from which the issuing judge could make a probable cause determination based upon the informant's credibility and the reliability of his information. If indeed this were all the affidavit set forth, defendant's claim might be plausible. However, defendant neglects to notice the other portion of the affidavit describing the controlled drug buy arranged by Officer Crowley after the informant came to him with information that Larry Moiser was selling marijuana from 10104 Count Drive.

The affidavit states that informant had approached Officer Crowley and identified Larry Moiser of 10104 Count Drive as a large scale trafficker of marijuana. The affidavit further states that Moiser had offered to sell the informant 50 pounds of marijuana and would call when the shipment was available for sale. Later, the informant told Crowley that Moiser had contacted him regarding the sale. The informant was given purchasing money, searched for controlled substances, observed entering 10104 Count Drive, and observed returning from the residence with a bag of green vegetation field-tested to be marijuana.

The personal knowledge of the informant corroborated through other sources is enough to establish probable cause. *State v. Ambrosio*, 632 S.W.2d 262, 265 (Mo.App. 1982). Here, the corroborating source was the controlled drug buy in which the informant entered 10104 Count Drive drug-free and returned with a bag of marijuana. We find these circumstances sufficient to provide a judge with a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. *Compare State v. Sargent*, 702 S.W.2d 877, 881 (Mo.App.1985) in which an informant told the police that a defendant was selling marijuana from a residence and that the informant had purchased some previously. Officers surveyed the residence and observed two known drug users enter. Based upon the above, this Court upheld the validity of the search warrant because the information supplied in the supporting affidavits came from informant's personal knowledge and was corrob-

orated through independent police work. *Id.* at 881.

We conclude that the search warrant was validly issued, and that the trial court did not err in denying defendant's motions to suppress the evidence obtained pursuant to the execution of that warrant.

■ Finding the search warrant valid, we may now consider defendant's charge that the evidence was insufficient to sustain his convictions under Count II, possession of more than 35 grams of marijuana, Count III, possession of psilocybin, and Count IV, possession of pentazocine. Initially, we reiterate that in determining whether evidence is sufficient to sustain a criminal conviction, we accept as true all evidence, direct and circumstantial, and all reasonable inferences which are most favorable to the verdict and disregard the evidence and inferences contrary to a finding of guilt. *State v. Ritterbach,* 637 S.W.2d at 822.

■ To sustain a conviction for possession of a controlled substance, the state must prove that the defendant knowingly and intentionally possessed the proscribed substance. *State v. Barber,* 635 S.W.2d 342, 343 (Mo.1982); *State v. Robinson,* 664 S.W.2d 543, 546 (Mo.App.1983).

To meet this burden, conscious, intentional possession, either actual or constructive, must be established. *State v. Burns,* 457 S.W.2d 721 (Mo.1970); *State v. Polk,* 529 S.W.2d 490 (Mo.App.1975). The state must also show that the defendant was aware of the presence and nature of the substances in question. *State v. Wiley,* 522 S.W.2d 281, 292 (Mo. banc 1975). Both possession and knowledge may be proved by circumstantial evidence. If actual possession has not been shown, "constructive possession will suffice when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance." *State v. West,* 559 S.W.2d 282, 284 (Mo.App.1977). Exclusive control of the premises on which controlled substances are found raises an inference of possession and control of those substances. *State v. Funk,* 490 S.W.2d 354,

360 (Mo.App.1973). But if there is joint control of the premises, some further evidence is necessary to connect the accused with the drugs. *Id.* at 361. *State v. Barber,* 635 S.W.2d at 343–44.

■ We conclude that the facts in evidence do not support a finding that defendant knowingly and intentionally possessed the controlled substances under Counts II and IV. No evidence was presented to illustrate that defendant owned, lived at, or was a regular visitor to the residence at 10104 Count Drive. No evidence was presented that defendant received mail at 10104 Count Drive, or that the utilities were in his name. Furthermore, defendant was only one of several people present when the search warrant was executed. The evidence at most indicated joint, rather than exclusive, control of the premises. "The mere presence of the accused on the shared premises where the drugs are found does not suffice to convict for possession. *State v. Wiley,* 522 S.W.2d 281, 292[22–25] (Mo. banc 1975). Nor does proximity to the contraband, alone, even as to a substance in plain sight, tend to prove ownership or possession as among several persons who share the premises. *State v. Moore,* 659 S.W.2d 252, 255[3–5] (Mo.App.1983)." *State v. Bowyer,* 693 S.W.2d 845, 847 (Mo.App.1985). Further evidence of corroborating, incriminating circumstances beyond joint control is necessary to make a submissible case on Counts II, III, and IV. *State v. Reynolds,* 669 S.W.2d 582, 584 (Mo.App.1984).

Under Count II, possession of more than 35 grams of marijuana, traces were found in various rooms of the house and approximately 144 pounds were discovered hidden in the basement. The record does not indicate exactly where defendant was located in the house when the search warrant was executed, or whether defendant had access to the rooms where the marijuana was discovered. Furthermore, no marijuana was found on defendant's person. Similarly, under Count IV, possession of pentazocine found in syringes contained in a bedroom dresser drawer, the record is silent as to whether defendant had any pentazocine

on his person or whether defendant was found in the bedroom, slept in the bedroom, or had access to the dresser drawer. No evidence is presented to show that defendant knowingly and intentionally possessed the marijuana under Count II or the pentazocine under Count IV.

Our courts have reversed possession convictions for insufficient evidence in similar cases. In *State v. Barber*, 635 S.W.2d at 344–45, John Barber was found in the bedroom of an apartment with two other people and over a thousand pills stacked and sorted on the bedroom floor. Because Barber did not have any of the capsules on his person, was not seen exercising any control over them, other adults were present in the apartment when the arrest was made, the apartment was not rented to Barber, and there was no evidence to establish that defendant had regular use, whether exclusive or joint, of the bedroom or any other part of the residence, our Supreme Court found insufficient evidence to support Barber's possession convictions. Similarly, in *State v. Reynolds*, 669 S.W.2d at 583–84, Leonard Reynolds and four other persons were found in a one bedroom duplex containing controlled substances on a coffee table in the living room. No evidence was presented to the effect that Reynolds owned or rented the duplex. Rather, Reynolds, his mother, and another witness testified that Reynolds lived at another address. An envelope, a business reply card, and a checkbook all belonging to Reynolds were found at the duplex. In reversing Reynolds' conviction for possession of controlled substances, this Court stated that since Reynolds did not have actual possession of the drugs, was not observed exercising any control over them, and appeared at most to be a joint tenant of the premises, the state is required to show additional incriminating facts to buttress an inference of defendant's knowledge of the presence of the controlled substance. *Id.* at 584. This court held that:

> The only showing that the state has made is that defendant may have had joint control of the premises and defendant's " 'proximity to persons or locations with drugs about them.' " *State v.*

*McGee*, 473 S.W.2d 686, 687 (Mo.1971). Cf. *State v. Jackson*, 576 S.W.2d 756, 757 (Mo.App.1979). Without evidence of corroborating, incriminating circumstances beyond joint control of the premises, we must conclude that there is insufficient evidence of constructive possession and, thus, no submissible case. Cf. *State v. Stewart*, 542 S.W.2d 533, 538 (Mo.App. 1976).

*Id.* at 584.

As for Count III, we conclude that the facts in evidence do support a finding that defendant knowingly and intentionally possessed the controlled substance. Count III dealt with the possession of psilocybin ("mushrooms") found inside a metal security box. The record indicates that defendant, defendant's wife, and a friend of the wife each had keys to the box. During the search, defendant gave the police his key to the box containing the mushrooms. Inside the box the police found the money used in the controlled drug buy, and a piece of paper containing names, numbers, and figures. The handwriting on the paper matched that of defendant, and the serial numbers on the money corresponded with those given to the defendant by the informant for the earlier purchase of marijuana.

In addressing Count III we reiterate the holding in *State v. West*, 559 S.W.2d 282, 284 (Mo.App.1977), that if actual possession has not been shown constructive possession will suffice when other facts buttress an inference of defendant's knowledge of the controlled substance. We are also aware that in addition to showing possession, "[t]he state must show that the defendant was aware of the presence and nature of the substances in question." *State v. Carouthers*, 714 S.W.2d 867, 869 (Mo.App. 1986).

In *State v. Dethrow*, 674 S.W.2d 546, 550 (Mo.App.1984), controlled substances were found in a jewelry box in defendant's residence. The box also contained defendant's jewelry and several papers belonging to him. The court found defendant's belongings mixed with the drugs in the box sufficient to establish his access to and control over the box. For the "knowledge of the

presence and nature of the substances" requirement, the court relied on defendant's admission to the possession of certain drugs. *Id.* at 550. Additionally, we held that where the defendant admitted to the possession of two out of the three drugs in the box, this admission was sufficient circumstantial evidence to support the jury's finding that defendant knowingly possessed the third drug as well, even though defendant never admitted to knowingly possessing the third drug. *Id.* at 550.

Here, the evidence establishes that the defendant sold the informant a controlled substance, marijuana, and further, that the locked metal box contained the money from the sale and a piece of paper with defendant's handwriting. These items, mixed with the drugs found in the box and the fact that defendant had a key to the box, constitutes sufficient evidence of defendant's possession of the box and its contents. Additionally, the sale of the marijuana itself amounted to an admission of marijuana possession. Thus, we find that the presence of the money from the marijuana sale found together with the mushrooms (psilocybin), provides sufficient circumstantial evidence to support the jury's finding that defendant *knowingly* possessed the mushrooms (psilocybin).

We reverse defendant's convictions on Counts II and IV and instruct the trial court to enter judgments of acquittal on Counts II and IV and affirm on Counts I and III.

Finding sufficient evidence sustaining the conviction on Counts I and III necessitates addressing defendant's remaining points on appeal. In defendant's third point on appeal, it is alleged that the trial court erred in failing to grant a mistrial or in taking other corrective measures after the prosecutor made certain references to defendant's attorney during closing argument. Defendant maintains that these references suggested defense counsel suborned perjury, fabricated the defense, induced the jury to believe that the prosecutor had special knowledge showing defendant to be guilty, and were not supported by the evidence. Additionally, defendant

claims that the trial court erred in allowing evidence of Cathy Moiser's representation by defendant's attorney to arise during Cathy Moiser's cross-examination. Defendant argues that "all of these matters were irrelevant and immaterial and highly prejudicial." The basic thrust of this multifaceted point, however, is that the prosecutor alleged defendant's attorney suborned perjury or fabricated the defense.

■ During cross-examination, the prosecutor questioned Cathy Moiser regarding her plea of guilty to possession of controlled substances in connection with the incident for which defendant stood trial. Cathy Moiser testified that she appeared with defendant's attorney, Mr. Hine, at her sentencing:

Q. Mrs. Moiser, I'm going to direct your attention to August the 30th of 1985. Do you recall appearing in Division 14 which is directly next door to us before Judge Hartenbach?

A. Yes, sir.

Q. And at that time you appeared with Mr. Hine, is that correct?

A. Yes, sir.

Q. And you withdrew your former plea of Not Guilty and entered a plea of Guilty, is that correct?

A. Yes, sir.

We find nothing in this passage indicative of defense counsel's impropriety. Indeed, prior to this testimony, the prosecutor informed the judge that his purpose was to illustrate collusion between defendant and Cathy Moiser, not that defense counsel was involved in the collusion. With this consideration in mind, the trial judge allowed the above cross-examination over defendant's objection. "Great latitude is allowed on cross-examination in a criminal case ... and the trial court is invested with much discretion in determining the extent of cross-examination." *State v. Lue*, 598 S.W.2d 133, 138 (Mo. banc 1980). We decline to disturb the trial court's ruling.

The objected portion of closing argument consisted of the following:

[Prosecutor]: You know what occurred here. The only person who tells you there are 5 people in the house when the sale occurs is Cathy Moiser. Really the only person who says anything close to what Mr. Hine was telling you is Cathy Moiser. The question is do you believe Cathy Moiser. Do you believe she lied at her plea of guilty when she was represented by Mr. Hine who just happens to represent Larry Moiser who then tells you there's something twisted about the system? But he tries to imply that it's twisted from the State from the bureaucracy. I can see this is the bureaucracy here.

Mr. Hine: Your Honor, I'd like to put an objection on the record.

The Court: Overruled, fair comment I believe on your argument.

■ The standard of review in determining the propriety of closing argument is clearly stated by our Supreme Court in *State v. Wood*, 596 S.W.2d 394, 403 (Mo. banc 1980):

The trial court is afforded wide discretion in determining the permissible scope of counsel's argument to the jury and unless an abuse of discretion is demonstrated, to the prejudice of the accused, the case will not be reversed on appeal. *State v. Conger*, 540 S.W.2d 169 (Mo. App.1976). In addition, it is proper for the prosecutor to retaliate to an issue raised by a defendant's argument even if the prosecutor's comment would otherwise be improper. *State v. Swenson*, 551 S.W.2d 917 (Mo.App.1977).

Furthermore, a prosecutor can go further by way of retaliation than he can in the first instance. *State v. Williams*, 721 S.W.2d 102, 107 (Mo.App.1986).

We find the prosecutor's remarks to be retaliatory to defense counsel's prior argument that Cathy Moiser is credible, that there is a government bureaucracy operating with binders on, and that "[t]here is some twisted things going on here."

Even if the remarks were not retaliatory, the prosecutor's comments do not exceed the bounds of professional decorum. "The prosecutor can argue from the record, within the bounds of professional decorum, that a witness' testimony is false, but arguments alleging that the defense counsel has suborned perjury or fabricated the defense are improper." *State v. Moomey*, 581 S.W.2d 899, 902 (Mo.App.1979). In *State v. Moomey*, the prosecutor made the following statements in rebuttal:

He [defense counsel] comes in and says Ray Moomey doesn't know what he's doing; he doesn't have the mental capacity to think of those things. Well, you heard Ray's testimony. What did he say? No —no—yes. *Maybe he didn't think of that story. Ray Moomey is represented by somebody who is very able in this —*

*Id.* at 903 (emphasis added).

In affirming the trial court's decision to allow such remarks, this court said the comments did not imply that defense counsel manufactured testimony. Furthermore, inferences to "the possibility of defendant having concocted a story was within the prosecutor's right in closing argument to comment on the evidence and the credibility of the witness." *Id.* at 902. Similarly in the instant case, the prosecutor's remarks are permissible. There are no implicit or explicit references to wrongdoing on the part of defense counsel, nor are there accusations that defense counsel fabricated his client's defense. Furthermore, suggesting that Cathy Moiser concocted her story lies within the permissible scope of closing argument by challenging her credibility.

This case is unlike *State v. Harris*, 662 S.W.2d 276 (Mo.App.1983) relied upon by defendant. In *Harris*, a defendant was charged with robbery. His defense was that he was given money for a homosexual encounter to which he refused to submit. During discovery, a defense investigator interviewed a state witness who saw the victim and defendant "dancing" the night of the robbery. The prosecutor argued that the investigator's eyes must have lighted up when the state's witness said defendant and victim appeared to be dancing, and the homosexual defense was then and there created. *Id.* at 277. The court held these remarks to imply that defense

counsel suborned perjury or fabricated the defense. *Id.* at 277.

As the defendant in our case candidly admits in his brief, the remarks in *Harris* were more blatant that those of the prosecutor in the present case. We find *State v. Moomey*, 581 S.W.2d 899 (Mo.App.1979) to be more analogous. The trial court did not abuse its discretion in allowing these remarks. We rule this point against defendant.

Defendant's fifth point is that the trial court erred in allowing the prosecutor to refer to the unavailability of the confidential informant, allowing the prosecutor to imply that the informant was dead, and in admitting evidence of a threat by defendant concerning the informant. Defendant maintains that these matters constituted impermissible evidence of other crimes (i.e., that defendant was responsible for the informant's unavailability due to death), implied knowledge by the prosecutor of facts not known to the jury, were unsupported by the evidence, and improperly placed defendant's character or reputation in issue.

■■■ Defendant cites this court to eight instances in the record where either the unavailability of the informant or evidence of a threat made by defendant concerning informant is mentioned. Only one of those instances has been properly preserved for appellate review. The other seven were either not objected to at trial or were not mentioned in defendant's motion for new trial. The general rule with respect to preservation of error is that "an objection stating the grounds must be made at the time the evidence is sought to be introduced, the same objection must be set out in the motion for new trial and must be carried forward in the appeal brief in order to preserve it." *State v. Pospeshil*, 674 S.W.2d 628, 632 (Mo.App.1984). "Failure to object at the earliest opportunity to the admission of evidence or argument of counsel constitutes a waiver of the claim." *Id.* at 633. However, this court elects to review the unpreserved allegations for plain error under Rule 29.12(b).

■■■ In pre-trial proceedings, an agreement was made between the prosecutor and defense counsel that neither would mention that the informant was deceased. However, the informant's unavailability could be mentioned. The prosecutor upheld this agreement. In none of the cited instances was the actual demise of the informant revealed. However, defendant appears to imply that there was also an agreement not to "dwell" on the informant's unavailability. Defendant stated that if the state would be able to mention the unavailability of the informant, "he would not dwell on it." Whether the prosecutor actually agreed to this later condition is unclear from the record. Defendant does not cite this court to a passage in the transcript showing acquiescence by the prosecutor, nor to any case law demonstrating the impropriety of "dwelling" on an informant's unavailability.

■■■ It is defendant's contention that these references coupled with testimony by a state's witness that, sixteen days after defendant's arrest, defendant made remarks that he was going to kill the informant implied that defendant was responsible for the informant's demise. Defendant argues this constituted impermissible evidence of other crimes.

Defendant's contention is without merit. The general rule is that evidence of other crimes is not admissible, unless such evidence has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954). "Evidence of threats by an accused toward a witness against him may be adduced in order to establish his guilt on the original charge.... Such evidence is admissible as showing a consciousness of guilt." *State v. Chunn*, 701 S.W.2d 578, 585 (Mo.App.1985). In *State v. Ball*, 562 S.W.2d 136, 137 (Mo.App.1978), a defendant threatened a witness twice after a burglary. The court allowed evidence of those threats despite the *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304 (banc 1954) general prohibition against evidence of other bad acts, stating that they indicated defendant's consciousness of guilt. Similarly in *State v. Mason*, 394 S.W.2d 343, 344 (Mo.

1965), a defendant leaned across a counsel table and threatened a state witness by saying, "I will get you before they try me." The court held evidence of this threat to be admissible over defendant's allegation that such evidence constituted proof of other crimes. We rule this point against defendant.

■ Defendant's sixth point is that the trial court erred in allowing evidence that defendant was involved in a "prior heroin sale" as this constituted impermissible evidence of another crime or bad act and was an improper attack upon defendant's character which had not been placed in issue.

The testimony complained of consisted of the following:

Q. [Prosecutor] Detective Crowley, what if anything else did Larry Moiser say to you?

A. Also at that time we brought it up to him about a prior heroin sale that he was involved in and he stated to me, "Oh, well, you know about that." The reason we brought that up, the person who he had sold to was also present at that house, one of the Tactical Operations officers. He also when questioned about the actual case he stated he didn't want to talk about it, about anything going on in the house.

Initially we note that no objection was raised at trial or carried forth in defendant's motion for new trial. Defendant's claim, therefore, is not preserved, *State v. Pospeshil*, 674 S.W.2d at 632, but will be reviewed under the plain error doctrine for a miscarriage of justice or manifest injustice affecting defendant's substantial rights. Rule 29.12(b).

The prevailing rule governing similar situations was stated in *State v. Warden*, 591 S.W.2d 170, 172 (Mo.App.1979):

Generally speaking, testimony which indicates a defendant's guilt of a different and separate offense is inadmissible.... However, where a state's witness volunteers an unresponsive reference to yet another unrelated, separate and distinct crime, such reference may or may not constitute reversible error. In

this respect, the trial court's decision to grant or not to grant a mistrial due to such an unresponsive reference is paid great deference, primarily because that court occupies a superior position from which to gauge the remark's prejudicial effect.

The testimony concerning the "prior heroin sale" was unresponsive to the prosecutor's question of "[w]hat if anything else did Larry Moiser say to you?" (T 284) Therefore, we must analyze the prejudicial effect of that remark with much deference paid to the trial court's decision to allow such testimony. We find the reasoning of *State v. Mitchell*, 674 S.W.2d 184 (Mo.App.1984) to be dispositive of this issue. In *State v. Mitchell*, a police witness was asked how he located defendant from a tip that defendant lived somewhere in the 3500 block of Cozens. The witness volunteered, "We had a folder of his past arrests and residences. And we, after going down the list, saw an address on Cozens at 3508. So, therefore, we responded to 3508 Cozens. 3508 as opposed to 3500." *Id.* at 185. In response to defendant's preserved point on appeal that the trial court erroneously denied a mistrial, this court found no error in admission. This court noted that: (1) the response was volunteered; (2) the witness had no intention, desire, or design to inject this into the record but was merely explaining his actions; and (3) the state made no further mention of the arrest. *Id.* at 185.

Similarly, Officer Crowley's response was volunteered. The question, put in its proper context, does not reveal any intention, desire or design of Officer Crowley to inject this into the record as evidence of another bad act. He was merely bringing forth this information because one of the Tactical Operations officers present at the house had been involved in the prior transaction. Furthermore, the state made no further mention of this "prior heroin sale" and did nothing to focus the jury's attention on it. Any prejudicial effect this remark may have caused defendant did not rise to the required level of miscarriage of justice or manifest injustice under the plain error doctrine. Point denied.

Defendant's seventh point is that the trial court erred in admitting evidence, on two separate occasions during the state's case, that the defendant had remained silent regarding the crimes for which he had been arrested.

During the direct examination of state witness Officer Crowley, as part of an answer to the question, "[w]hat if anything else did Larry Moiser say to you?", the witness replied, "He also when questioned about the actual case he stated he didn't want to talk about it, about anything going on in the house." This response occurred in a series of responses to which defendant admitted that a turn table in the residence was his and also that he had a key to the lock box. Also, during direct examination of state witness Officer Hutcherson, the following exchange occurred:

Q. Was Mr. Moiser read his Rights?
A. Yes, he was.
Q. You were present at the time that that was done?
A. Yes, I was.
Q. And did he respond when he was asked if he understood his Rights?
A. That's correct. As a matter of fact all the subjects that were read their Rights too all acknowledged they understood it and didn't have anything to say.

Defendant argues that this evidence violated and deprived him of his constitutional right to remain silent.

We note at the onset, that no objection was raised to this testimony at trial, nor was an objection included in defendant's motion for new trial. Hence, this allegation is not properly preserved for review, *State v. Pospeshil*, 674 S.W.2d at 632, but will be analyzed for plain error resulting in a miscarriage of justice or manifest injustice. Rule 29.12(b).

As the state concedes, "[a]dmittedly, an accused has no duty to speak, and the admission of evidence of his silence may constitute a violation of his constitutional rights. *State v. Stuart*, 456 S.W.2d 19, 22 (Mo. banc 1970). But, error in the admission of such evidence does not always require reversal, or ... rise to the level of manifest injustice. *See State v. Teal*, 624 S.W.2d 122, 125 (Mo.App.1981)." *State v. Mitchell*, 693 S.W.2d 155, 161 (Mo.App. 1985).

In *State v. Mitchell*, 693 S.W.2d 155 (Mo. App.1985) in response to a prosecutor's statement of, "Okay. Now what happened?", the state witness said, "At that time placed both subjects under arrest, conducted a search of both of them and advised them of their constitutional rights. Neither made any statements." *Id.* at 160. Under a plain error review, this court stated:

> The prosecutor here did not purposefully elicit the statement about defendant's silence, nor did she pursue the subject further. There was no effort to draw attention to the fact that the defendant exercised his right to remain silent. *See State v. Jakoubek*, 619 S.W.2d [880], 881 (Mo.App.1981). Under these circumstances, it is questionable whether any error was committed.

*Id.* at 161.

Similarly, in the present case, the prosecutor did not pursue defendant's silence further or draw attention to the fact that defendant exercised his right to remain silent. Under the circumstances of this case, we find no miscarriage of justice or manifest injustice requiring reversal. We rule this point against defendant.

Defendant's eighth point on appeal is that the trial court erred in permitting the prosecutor to mention, during voir dire examination, that Cathy Moiser, defendant's wife, may testify. During voir dire, the prosecutor stated: "You may also hear from Cathy Moiser. She is the wife of Larry Moiser. Anyone know Cathy Moiser?" Defendant argues that "said remark is in direct violation of and in contravention to the right of spouses to testify or not to testify at the trial of their spouse on a criminal charge."

Initially, we note that defendant raised no objection during voir dire, nor was an objection included in his motion for new trial. Therefore, this issue is not preserved for appellate review, *State v. Pospeshil*,

674 S.W.2d at 632, but will be analyzed for plain error resulting in a miscarriage of justice or manifest injustice. Rule 29.12(b).

 "The trial court is vested with broad discretion in controlling voir dire examination, including the nature and extent of specific questions. On appeal, the exercise of the trial court's discretion will be disturbed only when the record shows a manifest abuse of that discretion." *State v. Ball*, 622 S.W.2d 285, 288 (Mo.App.1981). One of the purposes of voir dire is to ferret out any bias or prejudice on the part of potential jurors, *Id.* at 287, and "[t]he state [has] a right to inquire into the jurors' relationship with possible witnesses." *State v. Frank*, 639 S.W.2d 209, 211 (Mo. App.1982). *See also* 50 C.J.S. *Juries* § 275 (1947).

In the present case, the prosecutor was simply performing the necessary duty of inquiring whether any potential juror knew Cathy Moiser. No miscarriage of justice or manifest injustice occurred prejudicing the substantial rights of defendant. Point denied.

Defendant's final point is that the trial court erred in allowing the state to produce rebuttal testimony concerning statements Cathy Moiser allegedly made to a probation officer regarding a pre-sentence investigation done as a result of her guilty plea to criminal charges. Defendant maintains that this testimony was improper rebuttal evidence, that the state was bound by Cathy Moiser's answers given during cross-examination by the state, and that this evidence was wholly collateral and unrelated to the crimes for which defendant stood trial.

No objection was made to this testimony, nor was an objection included in defendant's motion for new trial. This issue was not preserved for review, *State v. Pospeshil*, 674 S.W.2d at 632, but will be reviewed under the plain error doctrine for a miscarriage of justice or manifest injustice. Rule 29.12(b).

 "The determination of the scope of rebuttal is a trial court function that involves the use of discretion. Absent a gross abuse of that discretion, the appellate court will not reverse because the trial court allowed rebuttal testimony," *Id.* at 632–33. Furthermore, rebuttal evidence may directly or indirectly explain, counteract, repel, or disprove a defendant's evidence either directly or by implication. *State v. Jordan*, 699 S.W.2d 80, 82 (Mo. App.1985).

During Cathy Moiser's cross-examination by the state, the following exchange took place:

Q. Now you had not ever been convicted of a crime prior to this, is that correct?

A. That's right.

Q. And you went down to the Probation Office and talked with Julie Page after that, is that right?

A. That's right.

Q. Is it your testimony here today that it is not accurate that you told Julie Page that you were involved in a family business dealing marijuana out of that house and that Larry and Jimmy were dealing the marijuana out of the house too?

A. I didn't tell her Larry Moiser was dealing marijuana because when me and her was done talking she told me it didn't look like Larry Moiser had a thing to do with it all. That's exactly how that went.

Q. You didn't tell her what I just said to you, is that right?

A. I told her Larry might have been there sometimes but he didn't know what was all going on.

Cathy Moiser was defendant's chief witness. Her testimony illustrated that defendant was oblivious to the drug dealing at the house.

On rebuttal, the state called Julie Page, Cathy Moiser's probation officer, who gave the following account:

Q. What did she tell you with regard to Larry Moiser's involvement?

A. At the time she and Larry were married and we discussed their marital relationship and we also discussed if

there were any involvement of anyone else in the drug transactions.

Q. Specifically did she talk to you with regard to drug sales made out of that house?

A. Yes, we talked about that.

Q. And who did she tell you was making sales out of that house?

A. She identified herself as one person and Larry and her younger brother.

Q. And did she tell you who the drugs were in the house, I mean who they belonged to? Strike that.

With regard to the sales though she told you that she was selling out of the house along with her brother, Jimmy, and Larry?

A. Yes.

This rebuttal testimony serves to counteract, repel, and disprove Cathy Moiser's earlier statements that defendant "didn't know what was all going on." *Compare State v. Hyatt*, 716 S.W.2d 423 (Mo.App. 1986) in which defense witnesses testified that defendant was not the aggressor in a prosecution for felony assault. A police officer on the scene was allowed to testify in rebuttal to defendant's aggressive behavior. The court found no abuse of discretion in allowing such testimony. Similarly in the present case, the trial court did not abuse its discretion in allowing rebuttal evidence that defendant was aware of the drug dealings at 10104 Count Drive when the thrust of his defense was his ignorance of those dealings. No miscarriage of justice or manifest injustice exists prejudicing the substantial rights of defendant. We rule the point against defendant.

Judgment affirmed in part and reversed in part with instructions.

GARY M. GAERTNER, P.J., and STEPHAN, J., concur.