In re the Marriage of Clarence E. SIMINO, Petitioner/Respondent,

v.

Barbara J. SIMINO, Respondent/Appellant.

No. 56410.

Missouri Court of Appeals, Eastern District, Southern Division.

April 17, 1990.

STATE of Missouri, Respondent,

v.

Andrew KEEPER, Jr., Appellant.

No. 56438.

Missouri Court of Appeals, Eastern District, Division One.

April 17, 1990.

David L. Colson, Farmington, for respondent/appellant.

Nick A. Zotos, St. Louis, for appellant.

William L. Webster, Atty. Gen., Christine A. Alsop, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Andrew Keeper, Jr., appeals from his jury conviction on February 10, 1989, of possession of a controlled substance under RSMo § 195.020 (1986). Appellant was sentenced as a prior and persistent offender by Judge Robert Dierker on March 17, 1989, to twenty years imprisonment. Appellant's sole point in this appeal is that there is insufficient evidence to convict him of possessing a controlled substance.

We will affirm the verdict of the jury if we find that it is supported by substantial evidence. *State v. Mischanko*, 743 S.W.2d 867, 868 (Mo.App., E.D.1987). In determining whether substantial evidence exists, we accept as true all evidence

and inferences from the evidence which are favorable to the decision, disregarding all evidence and inferences to the contrary. *Id.* For the following reasons, we find that there was substantial evidence in this case to support the appellant's conviction.

On January 29, 1988, Jerry Leyshock, a police officer in the narcotics division of the St. Louis Police Department, received confidential information from a known informant concerning a house on 2853 Belt. Based on this information, Officer Leyshock drove by the residence and observed appellant, either his father or uncle, and an unidentified man standing on the sidewalk in front of the home. Officer Leyshock set up a surveillance of the residence and observed three different men enter the home, remain inside for a short while, and then leave the area. Armed with these observations, Officer Leyshock obtained a search warrant from a circuit judge.

Officer Leyshock and Detectives Al Upchurch and Brian Gilmore executed the search warrant. As they approached the front of the home, someone from inside yelled "police" and Detective Upchurch, who was leading the raid, responded that they were police officers with a search warrant. Detective Upchurch testified that upon entering the home, he observed three males talking in the living room. Two of these three "suspects" then fled to other parts of the home. Appellant was one of the two who fled. Detective Upchurch detained Wardell Lee in the living room of the home, Officer Leyshock followed appellant into the kitchen where he apprehended him, and Detective Gilmore apprehended Lonnie Keeper, appellant's cousin.

Appellant was standing by the oven when he was apprehended. On the oven, in plain view, was a glass bottle with a black cap containing a yellowish liquid. The liquid was later identified as phencyclidine

(PCP). Next to the bottle was an eyedropper and a More cigarette.[1]

Upon searching the rest of the home, the officers found a sawed-off shotgun and a rifle in the center bedroom. A Listerine bottle filled with PCP and a glass bottle with PCP were found in the bathroom. In the basement, a half-gallon juice jar filled with PCP was discovered. The street value of the PCP in the jar was approximately $30,000 according to Officer Leyshock.[2] Another shotgun, a twelve-gauge, was found in the basement along with bullet-proof vests.

Officer Leyshock then searched a bedroom of the house and found a Sprite bottle hidden on top of one of the ceiling panels, which is a popular hiding place for such items. The Sprite bottle contained appellant's fingerprints and also contained PCP.

It was established that the house was owned by Sam Keeper, appellant's uncle. Sam Keeper rented the home to Eddie Keeper, Sam's brother, and Lonnie Keeper, appellant's cousin. Sam paid the taxes on the home, Eddie paid the rent and utilities. Appellant lived with his wife and two children in University City in St. Louis County, but it was established that appellant was a frequent visitor to the Belt Avenue home. Appellant also possessed keys to both of the locks to the front door of the home.

To sustain a conviction for possession of a controlled substance, the State must prove that the defendant knowingly and intentionally possessed the proscribed substance. *State v. Moiser,* 738 S.W.2d 549, 558 (Mo.App., E.D.1987). If actual possession is not present, constructive possession of the drugs will satisfy this burden if other facts exist which buttress the inference of defendant's knowledge of the presence of the controlled substance. *Id.* Exclusive control of the premises where

---

1. According to testimony, the eyedropper is used to coat a cigarette with the drug PCP and the user then smokes the cigarette in order to ingest the PCP. A More cigarette is often used because it is dark brown in appearance and hides the yellow color of the PCP.

2. This half-gallon of PCP was the largest single seizure made by the narcotics unit of the St. Louis Police Department at that time.

the drugs are found raises an inference of possession and control. *Id.* However, where only joint control of the premises is present, some further evidence is needed to connect the defendant with the drugs. *Id.*

With these principles in mind, we initially note that the appellant was not in actual, physical possession of any of the drugs seized at the house. Appellant was only one of three people found inside the house at the time of his arrest; he was not in exclusive control of the premises. Therefore, the most that can be said of appellant is that he was in joint control of the premises where the illegal substances were found. Our question is, therefore, whether there exists further evidence in the record to connect appellant with the PCP which was seized. If so, his joint control of the premises combined with this further evidence can constitute sufficient evidence to support his conviction. *State v. Jackson,* 576 S.W.2d 756, 757 (Mo.App., E.D.1979).

■ There are numerous cases which involve the sufficiency of evidence to sustain a conviction for possession of a controlled substance and each one necessarily turns on its own facts. It is clear from these cases, however, that the mere presence of the appellant on the premises where drugs are found is insufficient to uphold a conviction for possession. *Moiser,* 738 S.W.2d at 558.

■ The additional evidence which may suffice to support appellant's conviction include: routine access to an area where such substances are kept [*State v. Kerfoot,* 675 S.W.2d 658, 662 (Mo.App., E.D.1984)]; the presence of large quantities of the substance at the scene where appellant is arrested [*State v. Barber,* 635 S.W.2d 342, 344 (Mo.1982)]; and admissions of the accused [*State v. Wiley,* 522 S.W.2d 281, 292–293 (Mo. banc 1975)]. In *State v. Jackson,* the police executed a search warrant on an apartment and found Mr. Jackson standing near a kitchen table which contained syringes, measuring spoons, empty capsules, and eighteen heroin capsules. *Jackson,*

576 S.W.2d at 757. This court stressed that these items were in close proximity to him, in plain view, and were readily recognizable as drug related in finding that Mr. Jackson was in constructive possession of the drugs. *Id.*

In *State v. Mischanko,* this court found that Mr. Mischanko, who was in the front of the yard of the home in which drugs were discovered, was in constructive possession of the drugs by virtue of his access to the rooms in which the drugs were found and the presence of large quantities of drugs. *Mischanko,* 743 S.W.2d at 868–69.

■ The circumstances in the case at bar present a close case, nonetheless we believe additional factors exist which support the conviction. It was clear that appellant had frequently visited the home on Belt Avenue and had keys to its front door. When apprehended, appellant was standing right next to a bottle containing PCP and other drug paraphernalia. A very large quantity of PCP was, indeed, confiscated from the home. Appellant's fingerprints were also found on another bottle containing PCP which had been hidden in a ceiling tile. Moreover, appellant fled into the kitchen as the officers arrived. A defendant's flight upon realizing the presence of police can constitute additional evidence of guilt, further buttressing evidence of appellant's constructive possession of drugs. *Kerfoot,* 675 S.W.2d at 662.

These circumstances, in our view, constitute enough further evidence connecting appellant with the presence of PCP to support his conviction for possession of a controlled substance. We are presented here with more than appellant's mere presence on the premises where illegal drugs just happen to be found. The appellant's conviction and sentence are affirmed.

REINHARD and CRIST, JJ., concur.