STATE of Missouri, Respondent,

v.

**David L. MONTGOMERY, Jr., Appellant.**

**No. 17923.**

Missouri Court of Appeals, Southern District, Division Two.

Dec. 23, 1992.

Motion for Rehearing or to Transfer Denied Jan. 14, 1993.

Application to Transfer Denied Feb. 23, 1993.

Louis J. Nolan, Springfield, for appellant.

William L. Webster, Atty. Gen., Aundreia R. Alexander, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

A jury found defendant David L. Montgomery, Jr. guilty of distributing methamphetamine, and he was sentenced to a term of imprisonment of 15 years. Defendant appeals.

The information charged that on November 29, 1990, in Greene County, the defendant distributed methamphetamine "to a confidential informant of the Missouri State Highway Patrol" in violation of § 195.211, RSMo, as amended in 1989. The confidential informant did not testify at the trial, but the state's evidence showed him to be Larry Karstens. The only trial witnesses were state's witnesses Trooper Michael Rogers of the Missouri Highway Patrol, and Afton Ware, a chemist employed by the Missouri Highway Patrol.

On this appeal, defendant claims that the trial court erred in receiving into evidence, over his objection: (1) state's Exhibits 4–A and 4–C; each of the challenged exhibits is a transcript of a recorded telephone conversation between Karstens and defendant; (2) state's Exh. 1–B; a packet containing an off-white substance. Defendant does not challenge the sufficiency of the evidence to support the conviction. The evidence relevant to his two points will be reviewed.

In November 1990, Karstens sold some methamphetamine to Trooper Rogers, while the latter was working as an "undercover buy officer." Thereafter, Karstens served as a confidential informant for the highway patrol.

On November 29, 1990, at 7:25 p.m., Karstens, in the presence of Trooper Rogers, placed a telephone call from a pay phone in Greene County. With the permission of Karstens, Rogers used a recording device to record the conversation. Defendant was the other party to the conversation. The conversation was recorded on a microcassette, reproduced by Rogers on a larger cassette, and then transcribed as state's Exhibit 4–A. Although Rogers did not hear defendant's voice while the conversation was being recorded, Rogers later heard the defendant's voice and identified the voice on the recording as defendant's voice. Rogers testified that the telephone number which Karstens dialed was 863–1607.[1]

According to Exhibit 4–A, Karstens asked defendant what was up, and defendant said he was "waiting" and that it was "still go for tonight." Karstens told defendant that he, Karstens, would be at Karstens' home in about an hour and that he was calling from a telephone booth. Defendant told Karstens he was waiting for a call and that "it will probably be tonight." Karstens said, "Okay, I'll be home."

Following that conversation, Karstens and Rogers went to Karstens' residence, a trailer located at 1395 S. Westgate, Springfield "to await the arrival of methamphet-

---

1. The court received into evidence state's Exhibit 5, the Springfield telephone directory. That exhibit has not been filed here. It is a reason-

able inference that telephone number 863–1607 was listed in defendant's name as his residence phone.

amine." Rogers searched both Karstens and his trailer "to make sure there were no drugs present."

At 10 p.m. defendant arrived at Karstens' trailer. Rogers had concealed himself "in a cubbyhole" in the trailer. Rogers had placed a recording device in a bedroom where the drug transaction was to take place. Rogers identified defendant as the person who came to the trailer. Rogers also testified, "I overheard every word they said in the bedroom."

In the bedroom, defendant handed Karstens two small baggies, each containing an off-white substance. Karstens put both of them in a dresser drawer. Karstens paid defendant $300 which Rogers had provided Karstens. Karstens and defendant agreed to meet the next day and that Karstens would then pay more money for the substance. Defendant then left the trailer.

One of the baggies was later identified as state's Exhibit 1–A and the other as state's Exhibit 1–B. At the trial, chemist Ware testified that Exhibit 1–A contained methamphetamine and that he had not conducted tests to determine the composition of the contents of Exhibit 1–B.

On November 30, 1990, at 11 a.m., pursuant to prior arrangement, Rogers met Karstens at the trailer. Rogers provided Karstens with $1,100 in $100 bills. Karstens and Rogers went to a telephone booth and again a recorded conversation took place between Karstens and defendant. A transcript of that conversation was received into evidence as state's Exhibit 4–C.

According to Exhibit 4–C, Karstens told defendant, "I'm at a pay phone. I've got something for you." Defendant replied, "Why don't you come on by because I'm here by myself." Karstens said, "All right."

After the second telephone conversation, Rogers searched Karstens and Karstens' vehicle. Rogers said that Karstens "never left my sight until he got into [defendant's] house." Rogers followed Karstens in their respective vehicles until they reached defendant's house. Rogers watched Karstens enter the house. On his body, Karstens wore a recording device. After Karstens left defendant's house, Rogers followed him and searched him. Karstens was no longer in possession of the money.

■ Defendant's first point is that the trial court erred in receiving into evidence state's Exhibits 4–A and 4–C, the transcripts of the two telephone conversations between Karstens and defendant, over the objection of defendant, in that Trooper Rogers could hear only the words spoken by Karstens and could not hear the words spoken by the other person involved in the conversations, "and therefore could not testify as to the accuracy of the taped conversations."

"A trial court has broad discretion in determining the admissibility of evidence, and its determination will not be disturbed on appeal absent a clear abuse of discretion." *State v. Wahby*, 775 S.W.2d 147, 153 (Mo. banc 1989).

In *Wahby* the court said, at 153:

A proper foundation for the admission of a sound recording consists of:

(1) A showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement.

Defendant's brief, after quoting the foregoing elements enumerated in *Wahby*, says: "Appellant submits that the essential element missing in the foundation for the admission of the transcripts of tape recordings, State's Exhibits 4–A and 4–C, is that Trooper Rogers could not and did not hear the phone conversation on the other end of the line from Mr. Karstens."

As the excellent brief of the state points out, a similar contention was rejected in *State v. Moiser*, 738 S.W.2d 549 (Mo.App. 1987). There a confidential informant, one Howard, placed a telephone call in the pres-

ence of Officer Crowley and another officer. A tape recorder was attached to the telephone. At the trial, Howard did not testify. Officer Crowley identified defendant's voice as that which he heard on the tape recording and did so on the basis of having listened to the recording and having heard defendant speak. The trial court received the recording into evidence and defendant claimed it erred in doing so.

Defendant argued that since Howard was unable to testify, the only evidence identifying defendant as the participant in the telephone conversation was the testimony of Crowley and that Crowley's testimony was insufficient because he had not met defendant prior to the date of the conversation. At p. 555 the court said:

Defendant's contention is without merit. In a similar case, *United States v. McMillan*, 508 F.2d 101 (8th Cir.1974), a police officer participated in the recording of an informant's telephone conversation with a defendant to arrange a controlled buy. During the recording, the officer could only hear informant's part of the conversation. The officer then played back the tape and was able to identify defendant's voice. The court stated that the "standard for the admissibility of an opinion as to the identity of a speaker is merely that the identifier has heard the voice of the alleged speaker at any time." ... Defendant's argument that the police officers' identification of defendant is tainted because they had not heard defendant's voice prior to the date of the transaction misstates the applicable law. The test is whether, at any time, the officers had heard defendant's voice from which they could compare the voice heard on the tape and through the body microphone. Officer Crowley testified that he heard defendant's voice during the execution of the search warrant, and that defendant's voice and the voice on the tape "were from the same person." ... Furthermore, no specialized training in voice identification is required. *Eichelberger v. State*, 524 S.W.2d 890, 894 (Mo.App.1975). Thus, we find the officers' testimony sufficient

to establish defendant's identity as the speaker on the tape.

In the case at bar, Patrolman Rogers heard defendant's voice when Rogers overheard the Karstens/defendant conversation in Karstens' trailer on the night of November 29. At the trial Rogers testified, with respect to the recordings of the two telephone conversations, that he knew who was "the second speaker on the tape, the person Karstens had called." He stated that the second speaker was defendant. This was sufficient authentication to permit the introduction of the recording. *State v. Moiser, supra*, 738 S.W.2d 549, 555[1]; see also *U.S. v. Degaglia*, 913 F.2d 372, 375–376[2] (7th Cir.1990); Fed.R.Evid., Rule 901(b)(5), 28 U.S.C.A.

Defendant makes no claim that the challenged exhibits are not accurate transcripts of the recordings. This court holds that the trial court did not abuse its discretion in admitting the challenged exhibits. Defendant's first point has no merit.

■ Defendant's second point is that the trial court erred in receiving into evidence state's Exhibit 1–B, over defendant's objection, in that chemist Ware did not test the contents of Exhibit 1–B and could not give an opinion as to their composition.

The state's evidence showed that the two small baggies, each containing an off-white substance were handed by defendant to Karstens. Trooper Rogers took possession of the baggies and they were subsequently delivered to chemist Ware. Defendant does not challenge the state's proof with respect to chain of custody.

One of the baggies was marked Exhibit 1–A. Ware testified that the contents of Exhibit 1–A were methamphetamine. He did not test the contents of the other baggie, Exhibit 1–B. One reason he did not do so, so Ware testified, was that "in the laboratory we get multi-numbers of samples in on one case and we randomly select samples." He admitted, on cross-examination, that he could not state "with a reasonable degree of scientific certainty what bag B is." Ware testified that the contents of one of the baggies weighed 6.81 grams and

the contents of the other baggie weighed 6.89 grams.

Defendant argues that Exhibit 1–B was irrelevant and that it "does not prove any fact in issue due to its lack of identification." The state argues that there is circumstantial evidence to support the inference that the substance in Exhibit 1–B is the same as the substance in Exhibit 1–A which was tested and identified as methamphetamine, a Schedule II controlled substance. The state also argues that § 195.-211, RSMo, as amended in 1989, does not specify a quantity as a prerequisite for the offense of distributing methamphetamine. This court agrees with the state.

Defendant delivered both baggies to Karstens. As stated in *State v. Flenoid*, 838 S.W.2d 462, 467–468 (Mo.App.1992):

> [T]he challenged evidence thus constitutes part of the *res gestae* of the charge being tried.... This evidence was admissible to present a complete and coherent picture of events surrounding the [charged offense]. The state is given the latitude to furnish a complete and cohesive picture of the charged offense.

> The fact that there was stronger relevant evidence adduced at trial does not preclude the state from also using allegedly weaker relevant evidence. Because the state has the burden of proving a defendant's guilt beyond a reasonable doubt, the state should not be unduly limited in the manner in which it satisfies this quantum of proof.

This court holds that the trial court did not abuse its discretion in receiving Exhibit 1–B into evidence. See *State v. O'Dell*, 787 S.W.2d 838, 841–842[4,5] (Mo.App.1990). Defendant's second point has no merit.

The judgment is affirmed.

MONTGOMERY, P.J., and PREWITT, J. concur.